# VIRGINIA *v.* HICKS

No. 02–371.   Argued April 30, 2003—Decided June 16, 2003

SCALIA, J., delivered the opinion for a unanimous Court. SOUTER, J., filed a concurring opinion, in which BREYER, J., joined, *post*, p. 124.

*William H. Hurd*, State Solicitor of Virginia, argued the cause for petitioner. With him on the briefs were *Jerry W. Kilgore*, Attorney General, *Maureen Riley Matsen* and *William E. Thro*, Deputy State Solicitors, and *Christy A. Mc-Cormick* and *A. Cameron O'Brion*, Assistant Attorneys General.

*Deputy Solicitor General Dreeben* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Olson*, *Assistant Attorneys General Chertoff* and *McCallum*, *James A. Feldman*, *Michael Jay Singer*, and *Stephanie R. Marcus*.

*Steven D. Benjamin* argued the cause for respondent. With him on the brief were *Amanda Frost*, *Brian Wolfman*, and *Alan B. Morrison*.*

---

*Briefs of *amici curiae* urging reversal were filed for the City of Richmond et al. by *William G. Broaddus*, *Jonathan T. Blank*, *William H. Baxter II*, *Godfrey T. Pinn*, *Jr.*, and *John A. Rupp*; for the Council of Large Public Housing Authorities et al. by *Robert A. Graham*, *William F. Maher*, and *Carl A. S. Coan III*; for the Criminal Justice Legal Foundation by *Kent S. Scheidegger*; and for the National League of Cities et al. by *Richard Ruda* and *James I. Crowley*.

Briefs of *amici curiae* urging affirmance were filed for the American Civil Liberties Union et al. by *Mark J. Lopez*, *Steven R. Shapiro*, *Rebecca Glenberg*, and *David M. Porter*; for the DKT Liberty Project by *Julia M. Carpenter*; for the Richmond Tenants Organization et al. by *Catherine*

Justice Scalia delivered the opinion of the Court.

The issue presented in this case is whether the Richmond Redevelopment and Housing Authority's trespass policy is facially invalid under the First Amendment's overbreadth doctrine.

## I

## A

The Richmond Redevelopment and Housing Authority (RRHA) owns and operates a housing development for low-income residents called Whitcomb Court. Until June 23, 1997, the city of Richmond owned the streets within Whitcomb Court. The city council decided, however, to "privatize" these streets in an effort to combat rampant crime and drug dealing in Whitcomb Court—much of it committed and conducted by nonresidents. The council enacted Ordinance No. 97–181–197, which provided, in part:

> "'§1. That Carmine Street, Bethel Street, Ambrose Street, Deforrest Street, the 2100–2300 Block of Sussex Street and the 2700–2800 Block of Magnolia Street, in Whitcomb Court . . . be and are hereby closed to public

*M. Bishop;* for the Thomas Jefferson Center for the Protection of Free Expression by *J. Joshua Wheeler* and *Robert M. O'Neil;* and for Watchtower Bible and Tract Society of New York, Inc., by *Paul D. Polidoro* and *Philip Brumley.*

A brief of *amici curiae* was filed for the State of Alabama et al. by *Jeremiah W. (Jay) Nixon,* Attorney General of Missouri, *James R. Layton,* State Solicitor, *Erwin O. Switzer III,* and *Michele L. Jackson,* Assistant Attorney General of Alabama, and by the Attorneys General for their respective jurisdictions as follows: *Gregg D. Renkes* of Alaska, *M. Jane Brady* of Delaware, *Mark J. Bennett* of Hawaii, *Steve Carter* of Indiana, *Charlie J. Crist, Jr.,* of Florida, *Mike Moore* of Mississippi, *Jim Petro* of Ohio, *W. A. Drew Edmondson* of Oklahoma, *Hardy Myers* of Oregon, *Anabelle Rodríguez* of Puerto Rico, *Lawrence E. Long* of South Dakota, *Paul G. Summers* of Tennessee, *Greg Abbott* of Texas, and *Mark L. Shurtleff* of Utah.

use and travel and abandoned as streets of the City of Richmond.'" App. to Pet. for Cert. 93–94.

The city then conveyed these streets by a recorded deed to the RRHA (which is a political subdivision of the Commonwealth of Virginia). This deed required the RRHA to "'give the appearance that the closed street, particularly at the entrances, are no longer public streets and that they are in fact private streets.'" *Id.*, at 95. To this end, the RRHA posted red-and-white signs on each apartment building—and every 100 feet along the streets—of Whitcomb Court, which state: "'NO TRESPASSING[.] PRIVATE PROPERTY[.] YOU ARE NOW ENTERING PRIVATE PROPERTY AND STREETS OWNED BY RRHA. UNAUTHORIZED PERSONS WILL BE SUBJECT TO ARREST AND PROSECUTION. UNAUTHORIZED VEHICLES WILL BE TOWED AT OWNERS EXPENSE.'" Pet. for Cert. 5. The RRHA also enacted a policy authorizing the Richmond police

> "'"to serve notice, either orally or in writing, to any person who is found on Richmond Redevelopment and Housing Authority property when such person is not a resident, employee, or such person cannot demonstrate *a legitimate business or social purpose* for being on the premises. Such notice shall forbid the person from returning to the property. Finally, Richmond Redevelopment and Housing Authority authorizes Richmond Police Department officers to arrest any person for trespassing after such person, having been duly notified, either stays upon or returns to Richmond Redevelopment and Housing Authority property.'" App. to Pet. for Cert. 98–99 (emphasis added).

Persons who trespass after being notified not to return are subject to prosecution under Va. Code Ann. § 18.2–119 (1996):

> "If any person without authority of law goes upon or remains upon the lands, buildings or premises of an-

other, or any portion or area thereof, after having been forbidden to do so, either orally or in writing, by the owner, lessee, custodian or other person lawfully in charge thereof . . . he shall be guilty of a Class 1 misdemeanor."

## B

Respondent Kevin Hicks, a nonresident of Whitcomb Court, has been convicted on two prior occasions of trespassing there and once of damaging property there. Those convictions are not at issue in this case. While the property-damage charge was pending, the RRHA gave Hicks written notice barring him from Whitcomb Court, and Hicks signed this notice in the presence of a police officer.[1] Twice after receiving this notice Hicks asked for permission to return; twice the Whitcomb Court housing manager said "no." That did not stop Hicks; in January 1999 he again trespassed at Whitcomb Court and was arrested and convicted under § 18.2–119.

At trial, Hicks maintained that the RRHA's policy limiting access to Whitcomb Court was both unconstitutionally overbroad and void for vagueness. On appeal of his conviction, a three-judge panel of the Court of Appeals of Virginia initially rejected Hicks' contentions, but the en banc Court of Appeals reversed. That court held that the streets of Whitcomb Court were a "traditional public forum," notwithstanding the city ordinance declaring them closed, and vacated Hicks' conviction on the ground that RRHA's policy violated the First Amendment. 36 Va. App. 49, 56, 548 S. E. 2d 249, 253 (2001). The Virginia Supreme Court affirmed the en

---

[1] The letter stated, in part: " 'This letter serves to inform you that effective immediately you are not welcome on Richmond Redevelopment and Housing Authority's Whitcomb Court or any Richmond Redevelopment and Housing Authority property. This letter is an official notice informing you that you are not to trespass on RRHA property. If you are seen or caught on the premises, you will be subject to arrest by the police.' " 264 Va. 48, 53, 563 S. E. 2d 674, 677 (2002).

banc Court of Appeals, but for different reasons. Without deciding whether the streets of Whitcomb Court were a public forum, the Virginia Supreme Court concluded that the RRHA policy was unconstitutionally overbroad. While acknowledging that the policy was "designed to punish activities that are not protected by the First Amendment," 264 Va. 48, 58, 563 S. E. 2d 674, 680 (2002), the court held that "the policy also prohibits speech and conduct that are clearly protected by the First Amendment," *ibid.* The court found the policy defective because it vested too much discretion in Whitcomb Court's manager to determine whether an individual's presence at Whitcomb Court is "authorized," allowing her to "prohibit speech that she finds personally distasteful or offensive even though such speech may be protected by the First Amendment." *Id.*, at 60, 563 S. E. 2d, at 680–681. We granted the Commonwealth's petition for certiorari. 537 U. S. 1169 (2003).

## II

### A

Hicks does not contend that he was engaged in constitutionally protected conduct when arrested; nor does he challenge the validity of the trespass *statute* under which he was convicted. Instead he claims that the RRHA *policy* barring him from Whitcomb Court is overbroad under the First Amendment, and cannot be applied to him—or anyone else.[2] The First Amendment doctrine of overbreadth is an exception to our normal rule regarding the standards for facial challenges. See *Members of City Council of Los Angeles* v. *Taxpayers for Vincent*, 466 U. S. 789, 796 (1984). The showing that a law punishes a "substantial" amount of protected free speech, "judged in relation to the statute's plainly legiti-

---

[2] As noted, the Virginia Supreme Court held that invalidity of the RRHA policy entitled Hicks to vacatur of his conviction under the unquestionably valid trespass statute, which Hicks unquestionably violated. We do not reach the question whether federal law compels this result.

mate sweep," *Broadrick* v. *Oklahoma*, 413 U. S. 601, 615 (1973), suffices to invalidate *all* enforcement of that law, "until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression," *id.*, at 613. See also *Virginia* v. *Black*, 538 U. S. 343, 367 (2003); *New York* v. *Ferber*, 458 U. S. 747, 769, n. 24 (1982); *Dombrowski* v. *Pfister*, 380 U. S. 479, 491, and n. 7, 497 (1965).

We have provided this expansive remedy out of concern that the threat of enforcement of an overbroad law may deter or "chill" constitutionally protected speech—especially when the overbroad statute imposes criminal sanctions. See *Schaumburg* v. *Citizens for a Better Environment*, 444 U. S. 620, 634 (1980); *Bates* v. *State Bar of Ariz.*, 433 U. S. 350, 380 (1977); *NAACP* v. *Button*, 371 U. S. 415, 433 (1963). Many persons, rather than undertake the considerable burden (and sometimes risk) of vindicating their rights through case-by-case litigation, will choose simply to abstain from protected speech, *Dombrowski, supra*, at 486–487—harming not only themselves but society as a whole, which is deprived of an uninhibited marketplace of ideas. Overbreadth adjudication, by suspending *all* enforcement of an overinclusive law, reduces these social costs caused by the withholding of protected speech.

As we noted in *Broadrick*, however, there comes a point at which the chilling effect of an overbroad law, significant though it may be, cannot justify prohibiting all enforcement of that law—particularly a law that reflects "legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct." 413 U. S., at 615. For there are substantial social costs *created* by the overbreadth doctrine when it blocks application of a law to constitutionally unprotected speech, or especially to constitutionally unprotected conduct. To ensure that these costs do not swallow the social benefits of declaring a law "overbroad," we have insisted that a law's application to protected speech

be "substantial," not only in an absolute sense, but also relative to the scope of the law's plainly legitimate applications, *ibid.*, before applying the "strong medicine" of overbreadth invalidation, *id.*, at 613.

## B

Petitioner asks this Court to impose restrictions on "the use of overbreadth standing," limiting the availability of facial overbreadth challenges to those whose *own conduct* involved some sort of expressive activity. Brief for Petitioner 13, 24–31. The United States as *amicus curiae* makes the same proposal, Brief for United States as *Amicus Curiae* 14–17, and urges that Hicks' facial challenge to the .RRHA trespass policy "should not have been entertained," *id.*, at 10. The problem with these proposals is that we are reviewing here the decision of a *State* Supreme Court; our standing rules limit only the *federal* courts' jurisdiction over certain claims. "[S]tate courts are not bound by the limitations of a case or controversy or other federal rules of justiciability even when they address issues of federal law." *ASARCO Inc.* v. *Kadish*, 490 U. S. 605, 617 (1989). Whether Virginia's courts should have *entertained* this overbreadth challenge is entirely a matter of state law.

This Court may, however, review the Virginia Supreme Court's holding that the RRHA policy violates the First Amendment. We may examine, in particular, whether the claimed overbreadth in the RRHA policy is sufficiently "substantial" to produce facial invalidity. These questions involve not standing, but "the determination of [a] First Amendment challenge on the merits." *Secretary of State of Md.* v. *Joseph H. Munson Co.*, 467 U. S. 947, 958–959 (1984). Because it is the Commonwealth of Virginia, not Hicks, that has invoked the authority of the federal courts by petitioning for a writ of certiorari, our jurisdiction to review the First Amendment merits question is clear under *ASARCO*, 490 U. S., at 617–618. The Commonwealth has suffered, as a consequence of the Virginia Supreme Court's "final judgment

altering tangible legal rights," *id.*, at 619, an actual injury in fact—inability to prosecute Hicks for trespass—that is sufficiently "distinct and palpable" to confer standing under Article III, *Warth* v. *Seldin,* 422 U. S. 490, 501 (1975). We accordingly proceed to that merits inquiry, leaving for another day the question whether our ordinary rule that a litigant may not rest a claim to relief on the legal rights or interests of third parties, see *Valley Forge Christian College* v. *Americans United for Separation of Church and State, Inc.,* 454 U. S. 464, 474 (1982), would exclude a case such as this from initiation in federal court.

## C

The Virginia Supreme Court found that the RRHA policy allowed Gloria S. Rogers, the manager of Whitcomb Court, to exercise "unfettered discretion" in determining who may use the RRHA's property. 264 Va., at 59, 563 S. E. 2d, at 680. Specifically, the court faulted an "unwritten" rule that persons wishing to hand out flyers on the sidewalks of Whitcomb Court need to obtain Rogers' permission. *Ibid.* This unwritten portion of the RRHA policy, the court concluded, unconstitutionally allows Rogers to "prohibit speech that she finds personally distasteful or offensive." *Id.*, at 60, 563 S. E. 2d, at 681.

Hicks, of course, was not arrested for leafleting or demonstrating without permission. He violated the RRHA's *written* rule that persons who receive a barment notice must not return to RRHA property. The Virginia Supreme Court, based on its objection to the "unwritten" requirement that demonstrators and leafleters obtain advance permission, declared the *entire* RRHA trespass policy overbroad and void—including the written rule that those who return after receiving a barment notice are subject to arrest. Whether these provisions are severable is of course a matter of state law, see *Leavitt* v. *Jane L.,* 518 U. S. 137, 139 (1996) *(per curiam),* and the Virginia Supreme Court has implicitly de-

cided that they are not—that all components of the RRHA trespass policy must stand or fall together. It could not properly decree that they fall by reason of the overbreadth doctrine, however, unless the trespass policy, *taken as a whole,* is substantially overbroad judged in relation to its plainly legitimate sweep.[3]  See *Broadrick,* 413 U. S., at 615. The overbreadth claimant bears the burden of demonstrating, "from the text of [the law] and from actual fact," that substantial overbreadth exists.  *New York State Club Assn., Inc.* v. *City of New York,* 487 U. S. 1, 14 (1988).

Hicks has not made such a showing with regard to the RRHA policy taken as a whole—even assuming, *arguendo,* the unlawfulness of the policy's "unwritten" rule that demonstrating and leafleting at Whitcomb Court require permission from Gloria Rogers.  Consider the "no-return" notice served on nonresidents who have no "legitimate business or social purpose" in Whitcomb Court: Hicks has failed to demonstrate that this notice would even be given to anyone engaged in constitutionally protected speech.  Gloria Rogers testified that leafleting and demonstrations *are* permitted at Whitcomb Court, so long as permission is obtained in advance.  App. to Pet. for Cert. 100–102.  Thus, "legitimate business or social purpose" evidently includes leafleting and demonstrating; otherwise, Rogers would lack authority to permit those activities on RRHA property.  Hicks has failed to demonstrate that *any* First Amendment activity falls outside the "legitimate business or social purpose[s]" that permit entry.  As far as appears, until one receives a barment

---

[3] Contrary to JUSTICE SOUTER's suggestion, *post,* at 124 (concurring opinion), the Supreme Court of Virginia did not focus solely on the "unwritten" element of the RRHA trespass policy "[i]n comparing invalid applications against valid ones for purposes of the First Amendment overbreadth doctrine."  The fact is that its opinion contains *no* "comparing" of valid and invalid applications *whatever;* the proportionality aspect of our overbreadth doctrine is simply ignored.  Since, however, the Virginia Supreme Court struck down the *entire* RRHA trespass policy, the question presented here is whether the *entire* policy is substantially overbroad.

[redacted] 

notice, entering for a First Amendment purpose is not a trespass.

As for the written provision authorizing the police to arrest those who return to Whitcomb Court after receiving a barment notice: That certainly does not violate the First Amendment as applied to persons whose postnotice entry is not for the purpose of engaging in constitutionally protected speech. And Hicks has not even established that it would violate the First Amendment as applied to persons whose postnotice entry *is* for that purpose. Even assuming the streets of Whitcomb Court are a public forum, the notice-barment rule subjects to arrest those who reenter after trespassing and after being warned not to return—*regardless* of whether, upon their return, they seek to engage in speech. Neither the basis for the barment sanction (the prior trespass) nor its purpose (preventing future trespasses) has anything to do with the First Amendment. Punishing its violation by a person who wishes to engage in free speech no more implicates the First Amendment than would the punishment of a person who has (pursuant to lawful regulation) been banned from a public park after vandalizing it, and who ignores the ban in order to take part in a political demonstration. Here, as there, it is Hicks' nonexpressive *conduct*—his entry in violation of the notice-barment rule—not his speech, for which he is punished as a trespasser.

Most importantly, both the notice-barment rule and the "legitimate business or social purpose" rule apply to *all* persons who enter the streets of Whitcomb Court, not just to those who seek to engage in expression. The rules apply to strollers, loiterers, drug dealers, roller skaters, bird watchers, soccer players, and others not engaged in constitutionally protected conduct—a group that would seemingly far outnumber First Amendment speakers. Even assuming invalidity of the "unwritten" rule that requires leafleters and demonstrators to obtain advance permission from Gloria Rogers, Hicks has not shown, based on the record in this

case, that the RRHA trespass policy as a whole prohibits a "substantial" amount of protected speech in relation to its many legitimate applications. That is not surprising, since the overbreadth doctrine's concern with "chilling" protected speech "attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from 'pure speech' toward conduct." *Broadrick, supra,* at 615. Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating). Applications of the RRHA policy that violate the First Amendment can still be remedied through as-applied litigation, but the Virginia Supreme Court should not have used the "strong medicine" of overbreadth to invalidate the entire RRHA trespass policy. Whether respondent may challenge his conviction on other grounds—and whether those claims have been properly preserved—are issues we leave open on remand.

\* \* \*

For these reasons, we reverse the judgment of the Virginia Supreme Court and remand the case for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE SOUTER, with whom JUSTICE BREYER joins, concurring.

I join the Court's opinion and add this afterword to flag an issue of no consequence here, but one on which a future case might turn. In comparing invalid applications against valid ones for purposes of the First Amendment overbreadth doctrine, the Supreme Court of Virginia apparently assumed that the appropriate focus of the analysis was the "unwritten" element of the housing authority's trespass policy, that is, the requirement that nonresidents distributing literature or demonstrating on the property obtain prior authorization.

264 Va. 48, 58–60, 563 S. E. 2d 674, 680–681 (2002) (finding that the "unwritten" portion of the policy, although designed to punish unprotected activities, allowed the housing manager to prohibit protected speech "that she finds personally distasteful or offensive" and "speech that is political or religious in nature"). We, on the other hand, take a broader view of the relevant law, by looking to the potential applications of the entire trespass policy, written and unwritten. *Ante*, at 121–124. It does not matter here, however, which position one takes on the appropriate "law" whose overbreadth is to be assessed, for there is no substantial overbreadth either way. Regardless of the scope of the law that forms the denominator of the fraction here, the numerator of potential invalid applications is too small to result in a finding of substantial overbreadth. But in other circumstances, the scope of the law chosen for comparison with invalid applications might decide the case. It might be dispositive whether, say, a city's speech ordinance for a public park is analyzed alone or as one element of the combined policies governing expression in public schoolyards, municipal cemeteries, and the city council chamber. Suffice it to say that today's decision does not address how to go about identifying the scope of the relevant law for purposes of overbreadth analysis.