**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 9, 2005[*]
Decided June 28, 2005

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 04–2696

CURTIS L. WALKER,
    *Plaintiff-Appellant,*

    *v.*

GARY R. McCAUGHTRY, et al.
    *Defendants-Appellees.*

Appeal from the United States District Court for the Western District of Wisconsin

No. 04–C–095–S

John C. Shabaz,
*Judge.*

**O R D E R**

Wisconsin inmate Curtis Walker appeals from the dismissal of his civil rights lawsuit at the 28 U.S.C. § 1915A screening stage. During a search of Walker's cell, a guard found a letter from an inmate at another prison that referred to the Lords of Islam, a gang. After a hearing, Walker was found guilty of violating Wis. Admin. Code § DOC 303.20(3), which prohibits gang activity, and was punished with segregation, disciplinary separation, and a transfer to another prison. He filed a complaint claiming that the punishment violated his free speech rights, that § 303.20(3) is unconstitutionally vague and overbroad, and that he was deprived of due process. The district court dismissed the complaint, holding that Walker failed to state a claim. Walker now appeals, and we affirm.

---

[*]After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

The regulation Walker challenges as vague and overbroad is entitled "Group resistance and petitions" and provides in full:

> Any inmate who participates in any activity with an inmate gang, as defined in s. DOC 303.02(11), or possesses any gang literature, creed, symbols or symbolisms is guilty of an offense. An inmate's possession of gang literature, creed symbols or symbolism is an act which shows that the inmate violates the rule. Institution staff may determine on a case by case basis what constitutes an unsanctioned group activity.

In turn, § 303.02(11) defines an "inmate gang" as "a group of inmates which is not sanctioned by the warden." Another provision, § 309.365(5)(c)(2), provides that the warden may not approve an inmate gang as an activity group.

On appeal Walker initially contends that his First Amendment claim was improperly dismissed because only a compelling government need, addressed through the least restrictive possible means, could justify punishing him for possessing a letter. Walker is wrong: a prison regulation need only be reasonably related to a legitimate penological interest in order to survive constitutional attack. *Turner v. Safley*, 482 U.S. 78, 89 (1987); *Lindell v. Frank*, 377 F.3d 655, 657 (7th Cir. 2004). And we accord prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). In *Bell v. Wolfish*, the Supreme Court agreed with the Second Circuit on the basic premiss that a penal "institution must be permitted to use reasonable means to insure that its legitimate interests in security are safeguarded . . . [and courts] should not second-guess the expert administrators on matters on which they are better informed . . . [for] [c]oncern with minutia of prison administration can only detract the court from detached consideration of the question presented to it: does the practice or condition violate the Constitution?" *Id.* at 544. It is beyond question that prisons have a legitimate interest in preventing gang activity—such as inmate communications with gang members at other prisons—which poses a serious threat to institutional safety. *See Rios v. Lane*, 812 F.2d 1032, 1037 (7th Cir. 1987) (upholding regulation preventing gang activity even under earlier intermediate standard that required a substantial state interest addressed through the narrowest possible means); *see also Sasnett v. Sullivan*, 91 F.3d 1018, 1023 (7th Cir. 1996), *vacated on other grounds*, 521 U.S. 1114 (1997).

Walker next challenges the district court's dismissal of his overbreadth and vagueness claims, contending that the regulation vests so much discretion in prison

officials in defining gang activity as to be unconstitutional.  Insofar as Walker seeks monetary and declaratory relief, however, these claims, if successful, would imply the invalidity of his sentence and may not be raised in a suit under 42 U.S.C. § 1983.  *See Edwards v. Balisok*, 520 U.S. 641, 645–47 (1997); *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2001).  Proving the regulation unconstitutional would necessarily impugn his disciplinary conviction and segregation sentence, which extends his mandatory release date and therefore affects the duration of his confinement.  *See Cochran v. Buss*, 381 F.3d 637, 639 (7th Cir. 2004) (noting that suspension of good time credits could lengthen confinement and therefore could not be challenged in § 1983 suit).  But Walker also seeks an injunction to prevent enforcement of § 303.20, and succeeding would not impugn his sentence.  *See Edwards*, 520 U.S. at 648.

A regulation is overbroad and violates the First Amendment only if it punishes a "substantial" amount of protected free speech.  *Virginia v. Hicks*, 539 U.S. 113, 118–20 (2003); *Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1056 (7th Cir. 2004).  But inmates have restricted First Amendment rights, so the overbreadth concept has limited relevance to the prison context.  *Ustrak v. Fairman*, 781 F.2d 573, 580 (7th Cir. 1986).  This regulation threatens no protected speech at all—let alone a substantial amount—because, as noted above, it reasonably relates to a legitimate penological interest.

A regulation is unconstitutionally vague if it is so unclear that people of ordinary intelligence cannot determine what conduct it prohibits.  *United States v. Turcotte*, 405 F.3d 515, 531 (7th Cir. 2005).  A plaintiff raising a facial attack must demonstrate that the regulation is impermissibly vague in all of its applications—including its application to his case.  *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 (1982).  Here, Walker had notice that the letter was prohibited: it referred to the Lords of Islam, a group of inmates that the warden had not approved.  Moreover, although Walker says the regulation vests limitless discretion in prison officials to define gang activity, we have observed that outside of prison, statutes may give police officers discretion to identify gangs.  *See Fuller ex rel. Fuller v. Decatur Public Sch. Bd.*, 251 F.3d 662, 668 (7th Cir. 2001).  We see no reason why prison officials, operating in a dangerous environment rife with gang activity, cannot have the same discretion.

Finally Walker argues in general terms that he was deprived of due process because the guards punished him "for doing something law enforce[ment] officials said he could do"—namely, possessing the gang letter.  Walker implies that the prison officials screened the letter, observed the reference to the gang, and then gave the letter to Walker only to change their minds later.  But Walker's complaint reveals that the guards more likely missed the gang material when the letter arrived, and confiscated it as soon as they caught the reference.  Surely if a pistol

somehow made its way through security to an inmate via the mail, Walker would agree that prison officials could seize it upon discovery.

AFFIRMED.