[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 23, 2008
THOMAS K. KAHN
CLERK

_____

No. 06-14462

_____

D. C. Docket No. 05-81142-CV-KLR

CAMERON FRAZIER,
through his mother and next friend,
Christine Frazier,

Plaintiff-Appellee,

versus

JOHN WINN,
In his official capacity as Commissioner
of the Florida Department of Education,
F. PHILLIP HANDY,
In his official capacity as Chairman
of the Florida State Board of Education,
DONNA CALLAWAY,
T. WILLARD FAIR,
ROBERTO MARTINEZ,
PHOEBE RAULERSON,
LINDA TAYLOR,
KATHLEEN SHANAHAN,
In their official capacities as members
of the Florida State Board of Education,

Defendants-Appellants.

Appeal from the United States District Court
for the Southern District of Florida

**(July 23, 2008)**

Before EDMONDSON, Chief Judge, HILL and ALARCÓN,[*] Circuit Judges.

PER CURIAM:

This case involves Florida's Pledge of Allegiance statute, section 1003.44(1), Florida Statutes ("Pledge Statute"), which applies to students at <u>all</u> grade levels from kindergarten to twelfth grade. The statute states, in pertinent part:

> The pledge of allegiance to the flag . . . shall be rendered by students. . . . The pledge of allegiance to the flag shall be recited at the beginning of the day in each public elementary, middle, and high school in the state. Each student shall be informed by posting a notice in a conspicuous place that the student has <u>the right not to participate in reciting the pledge</u>. <u>Upon written request by his or her parent, the student must be excused from reciting the pledge</u>. When the pledge is given, <u>civilians must show full respect</u> to the flag <u>by standing at attention</u>, men removing the headdress, except when such headdress is worn for religious purposes . . . .

Fla. Stat. § 1003.44(1) (emphasis added).

---

[*]Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Circuit, sitting by designation.

Plaintiff (a minor), through his mother, filed a complaint challenging the constitutionality of the Pledge Statute, both facially and as applied to him as a then-eleventh grade student in a Palm Beach County public high school.[1]  Plaintiff contended that section 1003.44(1) is facially invalid because it requires that a student obtain a parent's permission before being excused from reciting the Pledge of Allegiance and stand during the Pledge of Allegiance even if excused.  Plaintiff sought declaratory and injunctive relief.

Accepting that the statute requires students to recite the Pledge unless a student has parental permission not to recite, the State defended the facial constitutionality of the statute.  The State stressed the fundamental constitutional right of parents to control the upbringing of their minor children and to decide whether a child should participate in the Pledge.  The State also argued that the statute's language requiring that "civilians" stand does not apply to "students" excused from the Pledge.  The State moved to dismiss Plaintiff's claims on these grounds.

The district court issued an order denying the State's Motion to Dismiss and granting Plaintiff's Motion for Judgment on the Pleadings, which was treated by the district court as a Motion for Summary Judgment.  The district court concluded

---

[1]The as-applied claims did not involve the State and were resolved by consent order.

that the Pledge Statute's requirement of parental consent was a facially

unconstitutional restriction that "robs the student of the right to make an

independent decision whether to say the pledge."  The district court also construed

the Pledge Statute to require that students excused from the Pledge must stand and

concluded that this requirement was facially unconstitutional. The district court's

ruling was made a final judgment.  The State appealed.  We affirm the district

court's judgment in part and reverse it in part.[2]

We address the two requirements imposed by the Pledge Statute that

Plaintiff alleges are facially unconstitutional.  First, we address whether the

statute's requirement that "civilians" stand at attention during the Pledge is

facially unconstitutional.  We then address the facial constitutionality of the

statute's requirement that a student provide a written request by a parent to be

excused from reciting the Pledge.

I.  Requirement that Students Stand

---

[2] Whether the Pledge Statute is unconstitutional as applied to Plaintiff is not before us.  We say nothing on that issue and decide nothing about the district court's judgment, except on the issue of whether the statute is facially unconstitutional.

The Pledge Statute states, in part, that "When the pledge is given, civilians must show full respect to the flag by standing at attention . . . ." Fla. Stat. § 1003.44(1). Plaintiff contends that this requirement is a violation of the First Amendment because it requires all students, even those excused from reciting the Pledge, to stand while the Pledge is given. We agree with Plaintiff. The "standing at attention" provision should not be enforced.[3] But we conclude that this portion of the statute may be severed, leaving the statute otherwise enforceable.

That students have a constitutional right to remain seated during the Pledge is well established. See, e.g., Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1274, 1278 (11th Cir. 2004) (noting that the right to remain seated and silent during the Pledge is clearly established); Banks v. Bd. of Public Instruction, 314 F. Supp. 285, 294-96 (S.D. Fla. 1970), aff'd, 450 F.2d 1103 (5th Cir. 1971) (concluding that rule requiring students to stand during the Pledge was unconstitutional). The State does not contest that this is the law. Instead, the State argues that this Court—to avoid constitutional problems—should interpret the statute as requiring only students not exempted from the Pledge to stand.

---

[3]The statute requires students who pledge to stand when reciting the Pledge. See Fla. Stat. § 1003.44(1) ("The pledge of allegiance to the flag . . . shall be rendered by students standing with the right hand over the heart."). This requirement applies independently of the "standing at attention" provision at issue here.

The State is correct that, when deciding between two plausible statutory constructions, courts should adopt the construction that avoids constitutional problems. See Clark v. Martinez, 125 S. Ct. 716, 724 (2005) ("[W]hen deciding which of the two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice. If one of them would raise a multitude of constitutional problems, the other should prevail . . . ."). Here, however, the State's construction seems improbable to us. The Pledge Statute expressly requires "civilians" to stand during the Pledge. No limiting terms apply to "civilians"; it seems easily to cover all students. And no mention is made of the parental-written-request provision that applies to the requirement to recite the Pledge.

We agree with the district court on the construction of the statute. The most probable, accurate interpretation of the statute is that the term "civilians" distinguishes most people from "persons in uniform"—persons who are required by the rules pertaining to the use of the United States flag to render a military salute when the Pledge is recited. See Elk Grove Unified Sch. Dist. v. Newdow, 124 S. Ct. 2301, 2305-06 (2004) (noting that section 7 of the Joint Resolution codifying the rules of use of the United States flag provides that "Civilians will always show full respect to the flag when the pledge is given by merely standing at

6

attention, men removing the headdress. Persons in uniform shall render the military salute").

Having determined that the Pledge Statute's requirement that "civilians" stand during the recitation of the Pledge in schools is a violation of the Constitution, we must consider whether this requirement is severable from the rest of the statute. We owe the work of the elected representatives of the people of Florida respect; and we will invalidate no more of the statute than we must. "The standard for determining the severability of an unconstitutional provision is well established: Unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law." New York v. United States, 112 S. Ct. 2408, 2434 (1992) (internal quotation marks omitted). General state practice in Florida also favors severability. See Hershey v. City of Clearwater, 834 F.2d 937, 939-40 (11th Cir. 1987) (citing Kass v. Lewin, 104 So. 2d 572, 577 (Fla. 1958) and State ex rel. Limpus v. Newell, 85 So. 2d 124, 128 (Fla. 1956)).

As we noted in Hershey, "The fact that an invalid portion of a statute is not self-contained in separate sections does not prohibit the court from applying the severability rule to strike the invalid portion and to preserve the rest of the

enactment." 834 F.2d at 939. "[T]he Florida Supreme Court has struck a sentence and even a phrase while preserving the remainder of a statute." Id.

Because nothing indicates that the Florida legislature would have declined to enact the Pledge Statute absent the provision which we see as unconstitutional, we conclude that the invalid "standing at attention" provision may be severed. In this way, the statute can survive the "standing at attention" challenge. But to the degree the district court's judgment determines that a student—who is excused from pledging—cannot be required by the Pledge Statute to stand, the judgment is affirmed.

## II. Parental Consent Requirement

The Pledge Statute states that "The pledge . . . shall be rendered by students . . . . The pledge of allegiance to the flag shall be recited at the beginning of the day in each public elementary, middle, and high school in the state." Fla. Stat. § 1003.44(1). The statute permits students an exception to this requirement, however. The exception is triggered when a student has presented a signed, written statement from his parent excusing him (the student) from participating: "Upon written request by his or her parent, the student must be excused from

reciting the pledge." Id. Plaintiff challenges the statute, alleging that the statute's parental-permission requirement too broadly deters free speech and is facially unconstitutional: an overbreadth challenge.

An overbreadth challenge to a state statute "is based on a statute's possible direct and indirect burdens on speech. The overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial . . . ." Weaver v. Bonner, 309 F.3d 1312, 1318 (11th Cir. 2002) (internal quotation marks and citations omitted).[4]

For a federal court to invalidate a state statute on overbreadth grounds is—as the Supreme Court has said—"strong medicine." Virginia v. Hicks, 123 S. Ct. 2191, 2197 (2003). To establish that the Pledge Statute is facially invalid, Plaintiff must demonstrate that the statute punishes a "substantial" amount of protected free speech. See id. For overbreadth invalidation, the Supreme Court has insisted that the pertinent law's application to protected speech "be 'substantial,' not only in an absolute sense, but also relative to the scope of the law's plainly legitimate applications." Id.

---

[4]As we have noted, the First Amendment's prohibition on laws abridging the freedom of speech applies to state governments through the Fourteenth Amendment. Weaver, 309 F.3d at 1318.

9

Within the framework of the facial challenge, we measure the Pledge Statute against the appropriate First Amendment standard. As the Supreme Court in West Virginia State Bd. of Educ. v. Barnette wrote, "freedoms of speech . . . are susceptible of restriction only to prevent grave and immediate danger to interests which the state may lawfully protect." 63 S. Ct. 1178, 1186 (1943). Although the Court in Barnette ruled that "the action of the local authorities in compelling the flag salute and pledge" violated the Constitution, the Court noted that "the refusal of [plaintiffs] to participate in the ceremony does not interfere with or deny rights of others to do so. . . . The sole conflict is between authority and rights of the individual." Id. at 1187, 1181.

We see the statute before us now as largely a parental-rights statute. As such, this case is different from Barnette. Although the statute here generally requires students to recite the Pledge, the statute also requires students to be notified that they might be excused from reciting the Pledge. The statute then spells out how a student may be excused, that is, by getting his parent's consent. Most important, the statute ultimately leaves it to the parent whether a schoolchild will pledge or not.

Here, unlike in Barnette and in the cases cited by Plaintiff, the refusal of students to participate in the Pledge—unless their parents consent—hinders their

10

parents' fundamental right to control their children's upbringing.[5]  The rights of students and the rights of parents—two different sets of persons whose opinions can often clash—are the subject of a legislative balance in the statute before us. The State, in restricting the student's freedom of speech, advances the protection of the constitutional rights of parents: an interest which the State may lawfully protect.  See, e.g., Washington v. Glucksberg, 117 S. Ct. 2258, 2267 (1997) ("[T]he 'liberty' specially protected by the Due Process Clause includes the right[] . . . to direct the education and upbringing of one's children. . . .").

As the State pointed out before the district court and before us, the statute is neutral on the Pledge in the statute's deference to a parent's expressed wishes.[6] Should a parent request that his child not recite the Pledge—even where the child wishes to recite—the statute provides that the school must excuse the student.  Fla. Stat. § 1003.44(1) ("Upon written request by his or her parent, the student must be

---

[5]None of the decisions relied upon by Plaintiff and the district court decide the rights of custodial parents in opposition to the rights of their children because, in those cases, the custodial parent was not opposing the child's choice in exercising the child's speech. See Barnette, 63 S. Ct. at 1178; Holloman, 370 F.3d at 1252; Banks, 314 F. Supp. at 285.

[6]We suppose that the statute is not entirely neutral; the statute seems to start with the proposition that parents generally do not object to their student children reciting the Pledge.  We accept (and no one in this case has contended otherwise) that the elected Florida legislature probably does know about what parents in the state of Florida generally would prefer.  The structure of the statute does not, however, negate the State's legitimate interest in protecting the rights of all parents on the question of the Pledge and minor children; parents who express their intent either by sending in a written request or by declining to do so will have their views honored.

11

excused from reciting the pledge."). Likewise, the school will protect the interests of a parent who refuses to send in a written request that his child be excused.

Although we accept that the government ordinarily may not compel students to participate in the Pledge, e.g., Barnette, 63 S. Ct. at 1187, we also recognize that a parent's right to interfere with the wishes of his child is stronger than a public school official's right to interfere on behalf of the school's own interest. See Vernonia Sch. Dist. 47J v. Acton, 115 S. Ct. 2386, 2391-92 (1995) (discussing public school official's more limited role vis-à-vis parents with respect to infringing on a student's fundamental rights). And this Court and others have routinely acknowledged parents as having the principal role in guiding how their children will be educated on civic values. See Wisconsin v. Yoder, 92 S. Ct. 1526, 1541 (1972) (refusing to enforce a compulsory education requirement beyond the eighth grade where doing so would infringe upon the free exercise of the Amish religion and intrude on the "fundamental interest of parents . . . to guide the religious future and education of their children"); Arnold v. Bd. of Educ. of Escambia County, 880 F.2d 305, 313 (11th Cir. 1989) ("Within the constitutionally protected realm rests the parental freedom to inculcate one's children with values and standards which the parents deem desirable.").

We conclude that the State's interest in recognizing and protecting the rights of parents on some educational issues is sufficient to justify the restriction of some students' freedom of speech.[7] Even if the balance of parental, student, and school rights might favor the rights of a mature high school student in a specific instance, Plaintiff has not persuaded us that the balance favors students in a <u>substantial</u> number of instances—particularly those instances involving elementary and middle school students—relative to the total number of students covered by the statute. <u>See, e.g.</u>, <u>Muller by Muller v. Jefferson Lighthouse Sch.</u>, 98 F.3d 1530, 1538 (7th Cir. 1996) ("Age is a critical factor in student speech cases."); <u>see also</u> <u>Broadrick v. Oklahoma</u>, 93 S. Ct. 2908, 2918 (1973) ("[T]he overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.").

We therefore decline to validate Plaintiff's facial challenge. To the degree that the district court's judgment invalidates the "written request by . . . parent" requirement of the Pledge Statute, the judgment is reversed. We stress that we

---

[7] In addition, courts have limited the constitutional rights of minors and upheld state support of parental involvement in other contexts. <u>See</u> <u>Ayotte v. Planned Parenthood of N. New Eng.</u>, 126 S. Ct. 961, 966 (2006) (abortion); <u>Parents United For Better Sch., Inc. v. Sch. Dist. of Philadelphia Bd. of Educ.</u>, 148 F.3d 260, 274-77 (3d Cir. 1998) (condom distribution).

13

decide and hint at nothing about the Pledge Statute's constitutionality as applied to a specific student or a specific division of students.

AFFIRMED IN PART and REVERSED IN PART.