SUMMARY ORDER
Defendant-appellant Jeanette Foxworth appeals from a judgment of conviction, entered November 15, 2007, sentencing her primarily to fifteen months’ imprisonment. We assume the parties’ familiarity with the facts, procedural history, and specification of issues on appeal.
Foxworth argues first that her convictions for honest services wire fraud and conspiracy to commit honest services wire fraud must be overturned because the jury was allowed, to consider two alternative objects of the conspiracy to defraud, one of which was legally untenable as an object of the conspiracy, and the jury’s general verdict therefore makes it impossible to tell whether the jury convicted on a valid or invalid ground. It is true that “[a] conviction based on a general verdict is subject to challenge if the jury was instructed on *365 alternative theories of guilt and may have relied on an invalid one.” Hedgpeth v. Pulido, — U.S. -, 129 S.Ct. 530, 530, 172 L.Ed.2d 388 (2008) (per curiam). In this case, however, the government alleged only a single object of the conspiracy, that Foxworth conspired
to commit an offense against the United States, namely, to devise and intend to devise a scheme and artifice to obtain money, and property, and to defraud the State of Connecticut and its citizens of the intangible right to the honest services of [a] Public Official ... in that the Defendant used, and attempted to use, [a] Public Official’s position as a member of the General Assembly of the State of Connecticut to enrich herself....
This allegation of a single-object conspiracy was mirrored in the jury instructions. What Foxworth alleges were the two “objects” of the conspiracy, obtaining a contract from the Bridgeport Public Schools and obtaining a contract from the Charles Smith Foundation, were merely different means of achieving the single object of the conspiracy. Accordingly, Foxworth’s claim of Hedgpeth-type error fails.
Foxworth’s next argument is that the honest services wire fraud statute is unconstitutional because it is facially vague, vague as applied, and overbroad in violation of the First Amendment. Fox-worth’s facial-vagueness argument is precluded by this Court’s decision in United States v. Rybicki, 354 F.3d 124, 144 (2d Cir.2003) (en banc), which held that the honest services wire fraud statute “is not unconstitutionally vague] on its face.” Foxworth’s argument that the very same statute is facially vague necessarily fails.
As to her argument that the statute is vague as applied to her conduct, Foxworth’s claim again fails. The evidence at trial was sufficient to allow a reasonable juror to conclude that Fox-worth bribed a state senator, Ernest Newton, in exchange for Newton’s use of his position to coerce people into giving lucrative contracts to Foxworth and the business that she owned. In light of that conduct, it is not possible to conclude that Foxworth did not “ha[ve] a reasonable opportunity to know that [she] w[as] violating” the honest services fraud statute, nor is it possible to conclude that the statute does not “provide[] explicit standards for those who seek to apply [it]” in cases such as this. See id. at 132 (internal quotation marks omitted).
Foxworth’s First Amendment over-breadth challenge fails as well. Under the overbreadth doctrine, where a statute regulates conduct,
[a] showing that a law punishes a substantial amount of protected free speech, judged in relation to the statute’s plainly legitimate sweep, suffices to invalidate all enforcement of that law, until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression.
Virginia v. Hicks, 539 U.S. 113, 118-19, 123 S.Ct. 2191, 156 L.Ed.2d 148 (2003) (citation and internal quotation marks omitted). In Rybicki we explained that the honest services fraud statute punished “a wide swath” of unprotected conduct, 354 F.3d at 144; the case at bar demonstrates other unprotected conduct (bribing an elected official to coerce parties seeking state funds to give the briber business) covered by the statute. Assuming that protected free speech could be prosecuted under the honest services fraud statute— which requires an intent to defraud, see id. at 147 — it would not be a “substantial amount of protected free speech,” when that speech is “judged in relation to the statute’s plainly legitimate sweep.” Hicks, 539 U.S. at 118-19, 123 S.Ct. 2191 (internal quotation marks omitted); see also United *366 States v. Waymer, 55 F.3d 564, 569 (11th Cir.1995) (holding that the honest services fraud statute is not overbroad).
Foxworth next argues that, in relation to the wire fraud counts, the evidence was insufficient to show that she or a co-conspirator made any material misrepresentations or omissions. A material misrepresentation or omission is an element of honest services wire fraud, and in this context a misrepresentation or omission is “material” if it “ha[s] the natural tendency to influence or [is] capable of influencing [the public at large and such relevant decisionmakers as are members of the public to] change [their] behavior.” Rybicki, 354 F.3d at 147. The omission at issue here is Newton’s failure to disclose the $3000 he received from Foxworth to the public at large that elected him and to that subset of the public that he was pressuring on Fox-worth’s behalf. As we have previously noted, there was sufficient evidence for the jury to find that the $3000 was a bribe, and thus there was sufficient evidence from which the jury could reasonably conclude that the non-disclosure of a $3000 bribe was material in that, had the public at large or the relevant decisionmakers with the Bridgeport Public Schools or the Charles Smith Foundation known that the state senator who was coercing them was being bribed to do so, that knowledge would have had a natural tendency to influence their behavior.
Foxworth’s final challenge is to the sufficiency of the evidence underlying her convictions for making false statements. Specifically, she argues that there was insufficient evidence to show that the statements were material and that she knowingly and willfully made false statements. A false statement conviction requires a showing that the defendant, “in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully ... ma[de] any materially false, fictitious, or fraudulent statement or representation.” 18 U.S.C. § 1001(a)(2). As in the honest services fraud context, “a false statement is material if it has ‘a natural tendency to influence, or is capable of influencing, the decision of the decision-making body to which it was addressed.’ ” Neder v. United States, 527 U.S. 1, 16, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (alteration omitted) (quoting United States v. Gaudin, 515 U.S. 506, 509, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995)).
The first statement at issue is that Fox-worth told agents of the Federal Bureau of Investigation (“FBI”) that she gave Newton three checks made out to an election campaign, when in fact she gave Newton five checks made out to “cash” and to his son. The evidence was sufficient for a jury to find that this statement was material when made to FBI agents investigating the potential bribing of a state senator because the difference between making checks out to a legitimate campaign and to “cash” and a family member is highly relevant to the question of whether the payments were bribes or campaign contributions. That the FBI knew that the statements were false when they were made is irrelevant to their materiality. See United States v. McBane, 433 F.3d 344, 350-51 (3d Cir.2005) (rejecting the argument that “because the FBI’s investigation was essentially complete when the Agents spoke to [the defendant], his false statements added nothing,” and holding that materiality “require[s] only that the false statement at issue be of a type capable of influencing a reasonable decisionmaker,” not the specific agent conducting the interview). Similarly, because the evidence was sufficient for the jury to find that the checks were a bribe, the evidence was sufficient for the jury to find that Foxworth knew that the checks were a bribe made out to “cash” and a family *367 member, contrary to her statement to the FBI that they were made out to a campaign.
The second and third statements at issue are closely related: Foxworth told the FBI that she did not have a conversation with Newton about Newton loaning Fox-worth’s ex-husband $500 from Newton’s campaign funds, when in fact she had such a conversation; and Foxworth told the FBI that that same $500 was to pay her and her ex-husband back for a loan they made to Newton, when in fact the $500 was a loan from Newton to Foxworth’s ex-husband. There was sufficient evidence for the jury to conclude that these statements were material, since they could reasonably be understood as designed to convince the FBI that the $8000 Foxworth gave to Newton was a loan rather than a bribe, an issue that was central to the FBI’s bribery investigation. Further, given the evidence that Foxworth and Newton had several telephone conversations about the $500 loan, the jury could find that Foxworth knowingly and willfully made false statements when, only a few months later, she denied both the fact of those conversations and that the $500 was a loan from Newton.
We have considered all of Foxworth’s arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is hereby
AFFIRMED.