

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. WR-82,102-01

### EX PARTE CURTIS FOURNIER, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS FROM CAUSE NO. 1151921-A IN THE 351ST DISTRICT COURT HARRIS COUNTY

## NO. WR-82,103-01

### EX PARTE CHRISTOPHER DOWDEN, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS FROM CAUSE NO. 1300886-A IN THE 337TH DISTRICT COURT HARRIS COUNTY

YEARY, J., filed a dissenting opinion in which KELLER, P.J., joined.

### DISSENTING OPINION

With respect to the issue upon which we filed and set these post-conviction applications for writ of habeas corpus, brought under the auspices of Article 11.07 of the Texas Code of Criminal Procedure, I agree with the majority opinion today. For the reasons

stated in that opinion, Applicants are not entitled to relief on the basis of a claim of "actual innocence."

I nevertheless dissent to the Court's ultimate disposition of these cases. On the strength of *Ex parte Chance*, 439 S.W.3d 918 (Tex. Crim. App. 2014), the Court grants Applicants relief based upon its earlier declaration, in *Ex parte Lo*, that the statute upon which their convictions were based was unconstitutional on its face, as overbroad. 424 S.W.3d 10 (Tex. Crim. App. 2013). But the Court's *per curiam* opinion in *Chance* did not explain why the holding in *Lo* should apply to nullify convictions that were already final by the time *Lo* was decided. Because I would hesitate to give *Lo* retroactive effect, I dissent.

### The General Rule

Ordinarily, to establish that a legislative enactment is unconstitutional on its face, a litigant "must establish that no set of circumstances exists under which the [challenged statute] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). With that concept as a starting point, Texas has long recognized "the general rule" that an unconstitutional statute "is void from its inception[.]" *Reyes v. State*, 753 S.W.2d 382, 383 (Tex. Crim. App. 1988). When an appellate court has ruled a statute facially unconstitutional, the court has "not annul[ed] the statute, for it was already lifeless. It had been fatally smitten by the Constitution at its birth." *Id*. (citing *Ex parte Bockhorn*, 138 S.W. 706, 707 (Tex. Crim. App. 1911), which in turn quoted *Boales v. Ferguson*, 76 N.W. 18, 19 (1898)). *See also* 12B Tex.Jur.3d, Const. Law, § 57 (2012), at 97-99; 16A Am.Jur., Const. Law, § 195 (2d

ed. 2009), at 61-64. Stated another way:

> An act that has been declared unconstitutional is, in legal contemplation, as inoperative as though it had never been passed or written, and it is regarded as invalid, or void, from the date of enactment (not only from the date on which it was judicially declared unconstitutional) and at all times thereafter.

16 Corpus Juris Secundum, Const. Law § 265 (2015), at 333.[1]

Given this general rule—that an unconstitutional statute is inoperable "from its inception"—it may seem redundant or even pointless to engage in an analysis of retroactivity of the judicial decision that declared the statute to be unconstitutional. After all, it was not the judicial decision that nullified the statute; the statute was stillborn. Any analysis of retroactivity would surely result in a conclusion that the judicial opinion recognizing the facial unconstitutionality of a penal statute should be applied retroactively. Thus, any time a penal statute is declared facially unconstitutional—at least in the usual sense that it is invalid under some constitutional principle *in all of its applications*—it would make sense to hold the opinion declaring the facial unconstitutionality of the penal provision to apply to any and every individual ever convicted under that provision, in the future and in the past.

### *Ex parte Chance*

In *Ex parte Chance*, this Court apparently followed the general rule and gave

---

[1] "This rule, however, is not without exception." *Lapasnick v. State*, 784 S.W.2d 366, 368 (Tex. Crim. App. 1990). "[C]ourts may make exceptions to the general rule where, because of the nature of the statute and its previous application, unjust results would accrue to those who justifiably relied on it." 16A Am.Jur., Const. Law, § 196 (2d ed. 2009), at 64. *See also* 12B Tex.Jur.3d, Const. Law, § 57 (2012), at 98 (citing *Lapasnick*); 16 Corpus Juris Secundum, Const. Law, § 265 (2015), at 334.

retroactive application to our decision in *Ex parte Lo*. *See* 439 S.W.3d at 921 (Cochran, J., concurring) ("We follow this 'void ab initio' concept."). But in that case, as in this one, this Court failed to entertain or examine the question of whether an appellate decision declaring a penal statute to be unconstitutional under the First Amendment's substantial overbreadth doctrine ought to be given fully retroactive effect. To be fair, it is true that no litigant has as yet attempted to raise that question before us.

**The First Amendment Substantial Overbreadth Doctrine**

I believe it important to recognize that the ordinary rule—requiring that a litigant challenging a legislative enactment as unconstitutional on its face "must establish that no set of circumstances exists under which the [challenged statute] would be valid[,]" *Salerno*, 481 U.S. at 745—does not apply to First Amendment overbreadth challenges. A penal provision does not have to be unconstitutional in all of its applications in order for an appellate court to declare it facially unconstitutional under the First Amendment's overbreadth doctrine. Indeed, that criminal defendant's own First Amendment rights may remain unscathed by the indictment and prosecution against him, and yet he may still have standing to obtain a ruling that the penal statute under which he is charged is facially unconstitutional "if it prohibits a substantial amount of protected speech judged in relation to [its] plainly legitimate sweep." *Ex parte Lo*, 424 S.W.3d at 18 (quoting *Virginia v. Hicks*, 539 U.S. 113, 118-19 (2003)). As Texas Jurisprudence 3d describes this aspect of the so-called "substantial overbreadth doctrine":

Ordinarily, a person may not challenge a statute on the ground that it might be applied unconstitutionally in circumstances other than those directly before the court. In the area of First Amendment freedoms, however, an overly broad statute may serve to chill the exercise of protected rights, and an attack on such a statute will be allowed without requiring that the person making the attack demonstrate that his or her specific conduct is protected. Thus, as long as a case or controversy exists, a litigant whose own activities are unprotected may challenge a statute by showing that it substantially abridges the First Amendment rights of other parties not before the court. In other words, even though a statute or ordinance may be constitutionally applied to the activities of a particular defendant, that defendant may challenge the statute on the basis of overbreadth if it is so drawn as to sweep within its ambit protected speech or expression of others persons not before the court. Litigants are permitted to challenge a statute on First Amendment grounds not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's existence may cause others not before the court to refrain from constitutionally protected speech or expression.

12B Tex.Jur.3rd, Const. Law, § 40 (2012), at 69-70. *See also* 16A Am.Jur., Const. Law, §§ 428-30 (2d ed. 2009), at 369-377; 16B Corpus Juris Secundum, Const. Law, § 962 (2015), at 90-93.

### Is a Substantially Overbroad Statute "Void Ab Initio"?

But is an overbroad statute—facially unconstitutional only in the vicarious sense that it tends to "chill" the First Amendment rights of others not involved in the litigation—"void ab initio" in the same way that a statute that is unconstitutional in *all* of its applications may be said to be "void ab initio"? As already explained, the burden of proof in a First Amendment overbreath action is less than in an ordinary facial challenge to the constitutionality of a statute. When that burden has been met, a judicial finding of facial unconstitutionality for First Amendment overbreadth also constitutes less than a finding that

there is no conceivable application of the law consistent with the requirements of the Constitution. Under these circumstances, it is beyond dispute that a particular defendant who was convicted for a violation of the statute, and whose conviction became final before the penal statute was declared unconstitutional merely for overbreadth, may very well have committed conduct that fell within the "plainly legitimate sweep" of the overbroad statute. The Court has nevertheless determined, under our existing precedent, that pre-existing, final, and presumptively valid convictions under the statute must also be automatically and uncritically nullified. But I am not persuaded that we must go that far. In fact, I believe that to do so constitutes an unnecessary and unacceptable windfall to those defendants.

To a certain extent, of course, the First Amendment overbreadth doctrine inevitably creates windfalls. Once an appellate court has declared a penal provision unconstitutionally overbroad, no individual may be prosecuted *under that provision* from that point on, even if the individual's conduct falls well within the statute's plainly legitimate sweep. In fact, individuals will be free to commit that constitutionally actionable conduct with impunity until such time as the Legislature may proscribe it once again in a constitutionally tolerable statute.[2] This prospective windfall is justified by the fact that, before it may be declared facially unconstitutional, the penal statute must be said to reach protected conduct at a rate far exceeding its "plainly legitimate sweep." The admittedly "strong medicine" of striking

---

[2] This, of course, assumes that the same conduct is not also subject to prosecution pursuant to some other valid statute.

down a statute that has some constitutional applications, *Ex parte Thompson*, 442 S.W.3d 325, 349 (Tex. Crim. App. 2014), is thus necessary to alleviate its substantial "chilling" effect on constitutionally protected conduct. The question is, at what point is the medicine too strong?

A defendant finally convicted pursuant to a statute that is found only to be constitutionally overbroad is unlike a defendant who was convicted pursuant to a statute that has no conceivable constitutional applications. The former defendant may well have committed a constitutionally actionable offense under a statute that did not even remotely impinge upon *his* First Amendment rights. Consequently, retroactively declaring his conviction void ab initio would seem arguably to be neither necessary nor just. Declaring the statute invalid prospectively and enjoining the future enforcement of the law, it seems to me, might be more than sufficient to satisfy the interests and goals of the overbreadth doctrine—to ensure that the continued enforcement of the overbroad law will not chill the constitutionally protected expression of others.

There seems to be little reason to doubt that the prospective application of a judicial decision declaring a penal provision to be overbroad is strong enough.[3] The statute has been

---

[3] According to the United States Supreme Court, a defendant whose conviction is already final at the time of the announcement of a new rule may not ordinarily avail himself of the newly announced rule. *See Teague v. Lane*, 489 U.S. 288, 310 (1989). This rule might also be appropriately applied in cases such as these, when this Court decides that a law is overbroad in violation of the First Amendment. Of course, even if we were to apply the new rule doctrine, there may also be some number of other cases, also pending at different stages of litigation at the time of the Court's determination, that might need to be given the benefit of the new rule as well. *See e.g., Griffith v.*

struck down and may not be used in the future to prosecute even those offenders whose conduct was not constitutionally protected. This should suffice to enable the courts to alert the Legislature of the need to fine-tune the statute without seeming unduly critical of our co-equal branch—or, worse, punitive.

Whatever incremental value *retroactive* application may have to alleviate the chilling effect of the overbroad statute does not seem to me to be worth the societal cost of exonerating any number of offenders whose conduct was legitimately—if inartfully—proscribed. The windfall that inevitably flows from judicially declaring an overbroad penal provision to be facially unconstitutional need not extend so far as to apply retroactively to grant habeas corpus relief to applicants who have suffered no First Amendment infraction themselves.[4]

---

*Kentucky*, 479 U.S. 314, 328 (1987) (explaining, "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past."). However, the full extent to which the overbreadth decision would need to be extended to other cases in varying stages of litigation and not yet final does not need to be decided today.

[4] I am aware of the various opinions in *Massachusetts v. Oakes*, 491 U.S. 756 (1989). In that case, the United States Supreme Court granted certiorari solely to review whether a particular state statute was substantially overbroad. But the Court was ultimately unable to reach agreement on that issue. Instead, a plurality of the Court simply announced that it would not address the question after all because the Massachusetts Legislature had subsequently amended the statute in such a way as to cure any potential overbreadth. The plurality observed:

> Overbreadth is a judicially created doctrine designed to prevent the chilling of protected expression. An overbroad statute is not void ab initio, but rather voidable, subject to invalidation notwithstanding the defendant's unprotected conduct out of solicitude to the First Amendment rights of parties not before the court. Because the

This is an argument that neither the Court nor Judge Cochran in her concurring

---

> special concern that animates the overbreadth doctrine is no longer present after the amendment or repeal of the challenged statute, we need not extend the benefits of the doctrine to a defendant whose conduct is not protected.

*Id*. at 584. Thus, the plurality in *Oakes* would take the occasion of the amendment of an overbroad statute as a justification for failing ever to pass on the question of its facial constitutionality.

Five justices disagreed with this view, however, joining that part of Justice Scalia's opinion that dissented to the plurality's failure to reach the merits of the overbreadth question. In fact, that was the only facet of the case that garnered a majority. Because Justice Scalia and one other justice believed that the pre-amendment statute was *not* unconstitutionally overbroad, they provided the necessary votes to remand the case for determination of Oakes's as-applied challenge to the pre-amendment statute.

Justice Scalia's rejection of the plurality's view that an overbreadth analysis should not be undertaken at all once a statute has been amended does not apply with nearly the same force to the question presented in this case: whether a decision declaring a statute to be overbroad should be applied retroactively. Justice Scalia argues:

> If the promulgation of overbroad laws was cost free, as the plurality's new doctrine would make it—that is, if *no* conviction of constitutionally proscribable conduct would be lost, so long as the offending statute was narrowed before the final appeal—then legislatures would have significantly reduced incentive to stay within constitutional bounds in the first place. When one takes account of those overbroad statutes that are never challenged, and of the time that elapses before the ones that are challenged are amended to come within constitutional bounds, a substantial amount of legitimate speech would be "chilled" as a consequence of the rule the plurality would adopt.

The same criticism cannot fairly be leveled against the argument that retroactive application of the overbreadth doctrine is unnecessary. In *Oakes*, the plurality regarded the overbreadth question as moot and refused to reach it *at all*. By contrast, this Court has in fact declared the statute at issue in *Lo* to be facially unconstitutional on the basis that it is substantially overbroad. Such a statute can have no legitimate prospective application, and the judicial declaration that it is invalid may well be retroactively applied to any case still pending on direct appeal. It can no longer operate to chill legitimate speech, and its removal from the books for any future purpose should serve as incentive enough for the Legislature to take better care not to draft statutes that are insufficiently solicitous of First Amendment rights. The incremental value of also applying it retroactively to unravel final convictions for constitutionally *un*protected conduct seems to me not worth the candle.

opinion addressed before granting relief in *Ex parte Chance*. The Court seems instead to have uncritically applied the general rule that a facially unconstitutional statute is "void ab initio" without pausing to ask whether the general rule ought to apply in the context of the First Amendment substantial overbreadth doctrine. Indeed, without missing a step, we persist in doing so in these cases as well. I believe the Court should take the opportunity now to order briefing on the issue. At least then, we could give the matter its due consideration. Because we do not, I cannot join the Court's opinion.

**Conclusion**

Once a statute has been judicially recognized as unconstitutionally overbroad, that new rule should be given prospective application. I would not be averse, in cases where it is appropriate, to retroactively grant post-conviction habeas corpus relief as well—but we should consider whether we should limit post-conviction relief to those applicants who can establish that their conduct did not fall within the plainly legitimate sweep of the overbroad statute. I would order briefing on this issue. Applicants today have made no showing that the statute that we struck down in *Lo* was unconstitutional as it applied to their conduct. Without such a showing, I am reluctant to extend to them the benefit of a retroactive application of *Ex parte Lo*. Because the Court persists in doing so—in these, and many other cases—without ever considering or addressing, much less explaining, why it regards retroactive application to be necessary, and because the Court has not requested briefing on this issue from the parties, I respectfully dissent.

FILED:          October 28, 2015
PUBLISH