**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PEST COMMITTEE; TONY BADILLO;
JACK LIPSMAN; AL MAURICE; KENNY
BLACKMAN; WE THE PEOPLE
NEVADA; CITIZENS IN CHARGE,
            *Plaintiffs-Appellants,*

            v.

ROSS MILLER, in his official
capacity as Secretary of State for
the State of Nevada,
            *Defendant-Appellee.*

No. 09-17002

D.C. No.
2:08-cv-01248-
RLH-GWF

OPINION

Appeal from the United States District Court
for the District of Nevada
Roger L. Hunt, Chief District Judge, Presiding

Argued and Submitted
November 5, 2010—San Francisco, California

Filed December 1, 2010

Before: Arthur L. Alarcón, Pamela Ann Rymer, Circuit
Judges, and Matthew F. Kennelly, District Judge.*

Opinion by Judge Alarcón

---

*The Honorable Matthew F. Kennelly, United States District Judge for
the Northern District of Illinois, sitting by designation.

19037

## COUNSEL

Kermitt L. Waters, Law Offices of Kermitt L. Waters, Las Vegas, Nevada, for the plaintiffs-appellants.

C. Wayne Howle, Solicitor General, Office of the Nevada Attorney General, Carson City, Nevada, for the defendant-appellee.

Joseph W. Brown, Matthew T. Milone and Bradley Scott Schrager, Jones Vargas, Las Vegas, Nevada, for the Amici Curiae Las Vegas Chambers of Commerce, Reno-Sparks Chamber of Commerce, Nevada Mining Association, Inc., and Nevada Taxpayers' Association.

## OPINION

ALARCÓN, Circuit Judge:

This appeal arises from the unsuccessful efforts by a group of organizations and individuals who desire to use Nevada's initiative and referendum process to effectuate changes in Nevada law by placing initiatives on the Nevada ballot. These groups brought suit in federal court, asserting that certain of Nevada's statutory requirements for ballot initiatives and referenda violate federal constitutional rights. The district court granted summary judgment in favor of Defendant Ross Miller, the Secretary of State for the state of Nevada. It determined that Nevada's statutory single-subject, description-of-effect, and pre-election challenge provisions do not impose a

severe burden on First Amendment rights, are permissible regulations of the state's electoral process, and are not unconstitutionally vague. We affirm because we conclude that the district court did not err in dismissing Appellants' claims.

I

Both before the district court and on appeal, the parties agree that the relevant facts in this case are undisputed. The salient uncontroverted facts are summarized here.

The Nevada Constitution provides that "the people reserve to themselves the power to propose, by initiative petition, statutes and amendments to statutes and amendments to this Constitution, and to enact or reject them at the polls." Nev. Const. art. 19, § 2, cl. 1. The Nevada Constitution also authorizes the legislature to "provide by law for procedures to facilitate the operation" of the initiative process. Nev. Const. art. 19, § 5. Statutory provisions set out the procedures for placing initiatives and referenda on the ballot. Nev. Rev. Stat. 295.009-295.061.

Before an initiative or referendum petition can be circulated, a copy of the petition must be filed with the Secretary of State; after circulation, it must be returned to the Secretary of State for signature verification. Nev. Const. art. 19, § 1, cl. 2; § 2, cl. 3. The Nevada Constitution sets time lines to qualify petitions. The time line differs depending on the type of petition. For example, if an initiative petition proposes a statute or a statutory amendment, it must be filed with the Secretary of State "not earlier than January 1 of the year preceding the year in which a regular session of the Legislature is held." *Id.* § 2, cl. 3. After circulation, it must be filed with the Secretary of State for signature verification "not less than 30 days prior to any regular session of the Legislature." *Id.* If an initiative petition proposes a constitutional amendment, it may be filed with the Secretary of State "not earlier than September 1 of the year before the year in which the election is to be

held." *Id.* § 2, cl. 4. After circulation, it must be filed with the Secretary of State for verification "not less than 90 days before any regular general election." *Id.*

The statutory requirements for having an initiative placed on a Nevada ballot require that initiative sponsors gather signatures from registered voters in a number equal to 10% of the votes cast in the last general election. Nev. Rev. Stat. 295.012. In 2005, the Nevada legislature enacted Section 295.009, which sets out single-subject and description-of-effect requirements for initiatives and referenda:

> 1. Each petition for initiative or referendum must:
>
> (a) Embrace but *one subject and matters necessarily connected therewith and pertaining thereto*; and
>
> (b) *Set forth*, in not more than 200 words, *a description of the effect* of the initiative or referendum if the initiative or referendum is approved by the voters. The description must appear on each signature page of the petition.
>
> 2. For the purposes of paragraph (a) of subsection 1, *a petition* for initiative or referendum embraces but one subject and matters *necessarily connected therewith and pertaining thereto, if the parts of the proposed initiative or referendum are functionally related and germane to each other in a way that provides sufficient notice of the general subject of, and of the interests likely to be affected by, the proposed initiative or referendum.*

Nev. Rev. Stat. 295.009 (emphases added). A related provision permits pre-election challenges to an initiative or referendum as to whether it satisfies the single-subject and description-of-effect requirements:

> 1. Except as otherwise provided in subsection 3, *whether an initiative or referendum embraces but one subject* and matters necessarily connected therewith and pertaining thereto, *and the description of the effect of an initiative or referendum required* pursuant to NRS 295.009, *may be challenged by filing a complaint in the First Judicial District Court not later than 15 days*, Saturdays, Sundays and holidays excluded, *after a copy of the petition is placed on file with the Secretary of State* pursuant to NRS 295.015. All affidavits and documents in support of the challenge must be filed with the complaint. The court shall set the matter for hearing not later than 15 days after the complaint is filed and shall give priority to such a complaint over all criminal proceedings.

Nev. Rev. Stat. 295.061(1) (emphases added); *see also* Nev. Rev. Stat. 295.061(3) ("If a description of the effect . . . is challenged successfully . . . and such description is amended in compliance with the order of the court, the amended description may not be challenged."). In 2007, the legislature added a provision stating that, if a petition or description of effect is amended after the petition is placed on file with the Secretary of State, "[a]ny signatures that were collected on the original petition before it was amended are not valid." Nev. Rev. Stat. 295.015(2)(b).

The PEST Committee asserts,[1] and the Secretary of State

---

[1]Plaintiffs-Appellants are collectively referred to as "the PEST Committee" in this opinion. However, they are, in fact, a collection of organizations and individuals whose roles the district court succinctly summarized in its order granting summary judgment in favor of the Secretary of State.

Plaintiff-Appellant the PEST Committee is a Nevada ballot advocacy group organized to pass the Prevent Employers from Seizing Tips ballot initiative ("PEST initiative"). The PEST initiative sought to amend a section of a Nevada statute to prohibit an employer from requiring employees to share their tips with their supervisors. Tony Badillo is the chairman of

does not dispute, that 10 of the 15 initiative petitions filed by citizen groups in the 2008 Nevada election cycle were challenged, and not one of the challenged initiatives qualified for the ballot. The PEST Committee and We the People were among the groups that filed ballot initiatives to which private parties brought pre-election challenges pursuant to Section 295.061.1 during the 2008 election cycle.

Rather than defend the lawsuit against it, We the People withdrew its petition, redrafted its description of the effect of the proposed initiative to address the claims made by the challengers, and submitted its petition under a new title. Nonetheless, the opponents brought another challenge to the redrafted petition, again alleging that it contained a misleading description of effect. The parties subsequently reached an agreement on the description-of-effect language. We the People again withdrew its petition and refiled it with the revised description of effect. The district court summarized the subsequent history of We the People's petition:

> Following litigation, We the People had less than three months to circulate the petition and gather the required number of signatures before the verification deadline in May. After We the People failed to submit their petition in proper format by the deadline, they sued the Secretary of State, arguing the May deadline violated the Nevada Constitution. The Nevada Supreme Court agreed, invalidated NRS

the PEST Committee, and Al Maurice and Jack Lipsman are its other organizers. Kenny Blackman is a former dealer at Wynn Resorts who led an effort to overturn Wynn's policy of requiring its dealers to share their tips with supervisors. Plaintiff-Appellant We the People is a ballot advocacy group that has attempted to place a property tax initiative, similar to California's Proposition 13, on the Nevada ballot. Plaintiff-Appellant Citizens in Charge is a national foundation based in Virginia that works to protect and expand the initiative and referendum process throughout the United States.

295.056(3) as amended in 2007, and ordered the Secretary of State to accept the signatures submitted by the June deadline set in the prior version of the statute. *See We the People Nev. ex rel. Angle v. Miller*, 192 P.3d 1166 (Nev. 2008). Notwithstanding this decision, opponents again challenged the initiative in court for problems with the affidavits accompanying the signatures. The district court held that the problems with the affidavits invalidated the petition and enjoined the Secretary of State from including the initiative on the ballot. The Nevada Supreme Court affirmed. *See We the People Nev. v. Nev. State Educ. Ass'n*, No. 52390 (Nev. S. Ct. filed Oct. 21, 2008). Consequently, the Property Tax Reform Initiative for Nevada did not appear on the ballot.

Aug. 13, 2009 Order at 7-8.

The PEST Committee, the Nevada ballot advocacy group organized to pass the Prevent Employers from Seizing Tips ballot initiative ("the PEST Initiative"), filed an initiative with the Secretary of State on January 16, 2008. Opponents of the PEST Committee's initiative sued in state court, alleging the PEST Initiative violated the single-subject and description-of-effect requirements, improperly proposed administrative details, and violated the Nevada Constitution. The challengers also alleged that if the proposed initiative was enacted, it would violate the Equal Protection Clause of the United States Constitution. The PEST Committee removed the action to federal court based on the opponents' federal equal protection claim. After extensive briefing, on July 15, 2008, the United States District Court held that, "because the opponents' federal claim was premised on a wholly uncertain condition — namely, that the PEST Initiative would be passed by the voting public — the issue was not ripe for judicial review." *Id.* at 8. Holding that it lacked a basis for exercising federal jurisdiction, the district court remanded the case to the state court. *Id.* (citing *Nev. Rest. Ass'n v. Miller,* No. 3:08-cv-

00118-BES-VPC (D. Nev. filed July 15, 2008)). On July 28, 2008, the opponents filed a motion to recover the attorney fees they incurred as a result of the removal. The PEST Committee then agreed to withdraw the initiative in exchange for the opponents' promise to withdraw their motion for attorney fees. On August 6, 2008, the PEST Committee withdrew its initiative. Aug. 13, 2009 Order at 8.

This litigation commenced on September 18, 2008, when the PEST Committee, Tony Badillo, Jack Lipsman, and Al Maurice filed a complaint in the United States District Court for the District of Nevada. On September 29, 2008, the PEST Committee filed an Amended Complaint, adding Kenny Blackman, We the People, and Citizens in Charge as plaintiffs. Count One of the Amended Complaint alleged Nev. Rev. Stat. 295.009 and 295.061 were vague and overbroad, constituted a prior restraint, and chilled free speech in violation of the First and Fourteenth Amendments pursuant to 42 U.S.C. § 1983. Count Two challenged, as violative of the First, Fifth, and Fourteenth Amendments, statutory provisions requiring circulators of ballot initiatives to submit a notarized affidavit attesting that all signatures collected are of registered voters.

On January 16, 2009, the PEST Committee moved for partial summary judgment on the First Amendment claim (Count One). On April 27, 2009, the Secretary of State filed a response to that motion and filed a cross motion for summary judgment. On August 13, 2009, the district court ruled in favor of the Secretary of State and dismissed Count One.[2] The

---

[2]In the same order, the district court denied a motion to intervene filed by the Las Vegas Chamber of Commerce, the Reno-Sparks Chamber of Commerce, the Nevada Mining Association, and the Nevada Taxpayers' Association, Inc. These same groups filed an Amicus Brief in support of the Secretary of State of Nevada in connection with this appeal. The district court denied the motion to intervene on the ground that the proposed intervenors' interests were adequately represented by the Secretary of State. Aug. 13, 2009 Order at 11-14.

parties subsequently stipulated to dismiss Count Two of the Amended Complaint without prejudice. The district court entered final judgment on September 15, 2009. The district court had jurisdiction to hear the PEST Committee's claims alleging violations of the United States Constitution. 28 U.S.C. §§ 1331, 1343. This Court has jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291.

II

A

The PEST Committee's primary argument on appeal is that the district court erred in applying a flexible balancing test, and in concluding that the challenged statutory provisions governing ballot initiatives and referenda do not violate the federal Constitution. The PEST Committee contends that Nevada's single-subject and description-of-effect requirements, together with its pre-election challenge provision, burden core political speech or otherwise heavily burden First Amendment rights and, as such, must be subjected to strict scrutiny and narrowly tailored to serve a compelling state interest. According to the PEST Committee, strict scrutiny must be applied to challenges presented "in the context of ballot initiative restrictions." Appellants' Br. at 29. The PEST Committee also asserts, without citation to authority, that the district court erred "because strict scrutiny is warranted where the evidence demonstrates that the statutes have enabled powerful opponents of ballot initiatives to undermine the ability of the people to bring a ballot question to a vote, a right guaranteed by the Nevada Constitution." Appellants' Br. at 31. Finally, the PEST Committee urges that the district court erred in determining that neither the single-subject nor the description-of-effect requirement is unconstitutionally vague. It also argues that these requirements are unconstitutionally overbroad.

This Court reviews a district court's ruling on cross motions for summary judgment *de novo*. *Travelers Prop. Cas.*

*Co. of Am. v. Conocophillips Co.*, 546 F.3d 1142, 1145 (9th Cir. 2008). Additionally, "constitutional questions of fact (such as whether certain restrictions create a 'severe burden' on an individual's First Amendment rights) are reviewed *de novo*." *Prete v. Bradbury*, 438 F.3d 949, 960-61 (9th Cir. 2006).

B

The district court concluded that neither the single-subject nor the description-of-effect requirement severely burden speech "because, on their face, they are content neutral and do not restrict the overall quantum of speech." Aug. 13, 2009 Order at 15. The district court upheld the constitutionality of the requirements as reasonable, non-discriminatory means of furthering the important state interest of protecting the integrity of Nevada's election process, *e.g.*, by preventing voter confusion and promoting informed decision making. *Id.* at 16-17. The district court separately considered the PEST Committee's challenge to the pre-election challenge procedure. It explained that the pre-election challenge provision does not create a private right of action to bring pre-election challenges where none had previously existed; rather, the pre-election challenge provision "is a 'procedural mechanism for asserting challenges to a measure based on the single-subject requirement and the description of effect.' " *Id.* at 18 (quoting *Las Vegas Taxpayer Accountability Comm. v. City Council of the City of Las Vegas*, 208 P.3d 429, 438 (Nev. 2009)). The district court also stated that the pre-election challenge provision imposes no burden on political speech:

> Properly understood, NRS 295.061 does not burden Plaintiffs' First Amendment rights — it protects them. It is not, as Plaintiffs suggest, an underhanded attempt by the Legislature to thwart the initiative process by allowing political opponents to bring legal challenges to stall petition circulation. Rather, NRS 295.009 protects initiative proponents' speech

rights by ensuring that any legal challenge based on the single-subject and description-of-effect requirements are brought — and resolved — early. NRS 295.061 also furthers this important interest by providing a safe haven, after a petition has been challenged. This safe haven prevents repeat challenges to a petition based on its description of effect if the petition is amended in compliance with a court order. Accordingly, NRS 295.061 is a permissible and constitutional election regulation.

*Id.* at 19.[3] However, the district court did not expressly consider or rule on whether the challenged aspects of Nevada's statutory scheme burden core political speech.

In his Answering Brief, the Secretary of State maintains that the district court did not err in applying a flexible balancing test and determining that the challenged statutory provisions are not unduly burdensome and, instead, that they serve important state interests. However, the Secretary of State's argument proceeds from the premise that "[a]t its root, PEST's challenge is an assault on the single subject rule." Appellee's Answering Br. at 3.

---

[3]The district court went on to point out some of the practical problems with the PEST Committee's position:

> The Court is conscientious [sic] that Plaintiffs have invested significant time and resources to advocate for the passage of their proposed initiatives. The Court is also cognizant that Nevada's initiative and referendum regulations provide fertile ground for opponents to file preelection legal challenges that can trip up the unprepared initiative proponent. But the Constitution does not require Nevada "to structure its initiative process in the most efficient, user-friendly way possible." *See Biddulph [v. Mortham]*, 89 F.3d [1491,] 1500-01 [(11th Cir. 1996)]. Further, in the Court's view, Plaintiffs would be wise in the future to avoid repeatedly withdrawing and refiling their petitions, thereby allowing their opponents to bring repeat legal challenges.

*Id.* at 19.

In support of the Secretary of State's position, Amici Curiae, the Las Vegas Chamber of Commerce, the Reno-Sparks Chamber of Commerce, the Nevada Mining Association, and the Nevada Taxpayers' Association, Inc., argue that no United States Court of Appeals has ever found a single-subject rule violative of First Amendment rights and explain that both the Eleventh Circuit and the Tenth Circuit have found single-subject rules to be "perfectly valid exercises of the state's prerogative to structure its election processes in the manner it considers best suited to maintaining and preserving its integrity." Amicus Br. at 3. Amici also maintain that the judges of Nevada's First Judicial District Court in Carson City, Nevada (the court in which all such challenges must be brought initially) "have heard a number of such challenges in the five years since the enactment of the single subject rule, and the decisions . . . are very surely building a body of precedent in interpreting and applying N.R.S. 295.009 — the very same process that any rule, any law, undergoes." *Id.* at 10. Responding to the PEST Committee's concerns about "potential misuses of pre-election challenges by erstwhile 'political opponents[,]' " Amici note that "in the context of the Nevada Code generally, granting citizens such rights to participate [is] unremarkable, commonplace, and constitutional." *Id.* at 12-13 (citing Nevada Election Code provisions creating rights of action to: demand and receive a recount of the vote for a ballot question, Nev. Rev. Stat. 293.403(2); contest the election of any candidate, Nev. Rev. Stat. 293.407(1); challenge the qualifications of political candidates on the grounds that the candidate fails to meet any qualification required for the office, Nev. Rev. Stat. 293.182 and Nev. Rev. Stat. 293C.186; challenge the legal sufficiency of a petition to recall an elected official, Nev. Rev. Stat. 306.040(5); and challenge, in court, the qualifications of a minor political party, Nev. Rev. Stat 293.174).

The gravamen of the PEST Committee's argument is that the *pre-election challenge provision*, which permits private parties to bring suit in state court to challenge initiative and

referendum petitions as failing to satisfy the single-subject or description-of-effect requirements, must be subjected to strict scrutiny because it either (a) burdens core political speech or (b) otherwise imposes severe burdens on political speech protected by the First Amendment.

## III

**[1]** "The protection given speech and press was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *Roth v. U.S.*, 354 U.S. 476, 484 (1957). "Of course, core political speech need not center on a candidate for office. The principles enunciated in *Buckley* [*v. Valeo*, 424 U.S. 1 (1976)] extend equally to issue-based elections . . . ." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 347 (1995).

**[2]** The precise contours of what constitutes "core political speech" are less than perfectly clear. In *Meyer v. Grant*, 486 U.S. 414 (1988), the Supreme Court explained that "the circulation of a petition . . . is appropriately described as 'core political speech' " because it involves "interactive communication concerning political change." *Id.* at 421-22 (applying strict scrutiny to Colorado's prohibition on paying petition circulators). In *Buckley v. American Constitutional Law Foundation*, 525 U.S. 182 (1999), the Supreme Court applied heightened scrutiny to Colorado's name badge and reporting requirements for petition circulators, concluding that the "restrictions in question significantly inhibit communication with voters about proposed political change" because the one-on-one communication involved in petition circulation requires circulators to "endeavor to persuade electors to sign the petition." *Id.* at 192, 199.

Concurring in *Buckley*, Justice Thomas considered the distinction between regulations affecting core political speech and those regulating "mechanics of the electoral process":

> When core political speech is at issue, we have ordinarily applied strict scrutiny without first determining that the State's law severely burdens speech. Indeed, in *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 115 S. Ct. 1511, 131 L. Ed.2d 426 (1995), the Court suggested that we only resort to our severe/lesser burden framework if a challenged election law regulates "the mechanics of the electoral process," not speech. *Id.*, at 345, 115 S. Ct. 1511; *but see Eu v. San Francisco County Democratic Central Comm.*, 489 U.S. 214, 222-223, 109 S. Ct. 1013, 103 L. Ed.2d 271 (1989) (first determining that California's prohibition on primary endorsements by the official governing bodies of political parties burdened speech and association and then applying strict scrutiny). I suspect that when regulations of core political speech are at issue it makes little difference whether we determine burden first because restrictions on core political speech so plainly impose a "severe burden."

*Buckley*, 525 U.S. at 207-08 (Thomas, J. concurring); *see also Campbell v. Buckley*, 203 F.3d 738, 745 (10th Cir. 2000) (attempting to synthesize Supreme Court case law regarding when the application of strict scrutiny is required and concluding that "strict scrutiny is employed where the quantum of speech is limited due to restrictions on campaign expenditures, . . . the available pool of circulators or other supporters of a candidate or initiative, . . . or the anonymity of such supporters . . . ."). In *Rubin v. City of Santa Monica*, this Court considered a challenge to a city's refusal to permit a political candidate to designate on the ballot his occupation as "peace activist." 308 F.3d 1008, 1011 (9th Cir. 2002). Acknowledging that the restriction burdened the candidate's speech, the Court went on to explain that "[c]ourts will uphold as 'not severe' restrictions that are generally applicable, even-handed, politically neutral, and which protect the reliability and integrity of the election process." *Id.* at 1014.

**[3]** In *Prete v. Bradbury*, 438 F.3d 949 (9th Cir. 2006), we summarized the general rule for determining the appropriate level of scrutiny for First Amendment challenges to state election laws:

> As discussed *infra*, the circulation of initiative and referendum petitions involves "core political speech," and is, therefore, protected by the First Amendment. *See Meyer v. Grant*, 486 U.S. 414, 421-22, 108 S. Ct. 1886, 100 L. Ed.2d 425 (1988).

> The First Amendment does not, however, prohibit all restrictions upon election processes: "States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358, 117 S. Ct. 1364, 137 L. Ed.2d 589 (1997). Indeed, the U.S. Supreme Court has recognized "States allowing ballot initiatives have considerable leeway to protect the integrity and reliability of the initiative process, as they have with respect to election processes generally." *Buckley*, 525 U.S. at 191, 119 S. Ct. 636 (1999).

> For purposes of determining whether a state election law violates an individual's First Amendment rights, we "weigh the character and magnitude of the burden the State's rule imposes on those rights against the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary. Regulations imposing *severe burdens* on plaintiffs' rights must be narrowly tailored and advance a compelling state interest. *Lesser burdens*, however, trigger less exacting review, and a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions." *Arizona Right to Life Political Action Comm. [v. Bayless]*, 320 F.3d

> [1002,] 1007-08 [(9th Cir. 2003)] (quoting *Timmons*, 520 U.S. at 358, 117 S. Ct. 1364) (emphases added and internal quotation marks omitted). The U.S. Supreme Court has counseled against establishing any bright-line rule in this field: "no litmus-paper test will separate valid ballot-access provisions from invalid interactive speech restrictions; we have come upon no substitute for the hard judgments that must be made." *Buckley*, 525 U.S. at 192, 119 S. Ct. 636 (internal quotation marks omitted).

*Id.* at 961; *see also Nader v. Brewer*, 531 F.3d 1028, 1034-35 (9th Cir. 2008) (considering challenge to Arizona election laws related to the circulation of nomination petitions to place independent candidates on the ballot and explaining that, in the leading case in our circuit, *Libertarian Party of Washington v. Munro*, 31 F.3d 759 (9th Cir. 1994), "[w]e held that the burden on plaintiffs' rights should be measured by whether, in light of the entire statutory scheme regulating ballot access, 'reasonably diligent' candidates can normally gain a place on the ballot, or whether they will rarely succeed in doing so").

**[4]** When strict scrutiny is applied to a law that burdens core political speech or that imposes severe burdens on plaintiff's rights, the law must be narrowly tailored to serve a compelling government interest. *See Buckley*, 525 U.S. at 207 ("When a State's election law directly regulates core political speech, we have always subjected the challenged restriction to strict scrutiny and required that the legislation be narrowly tailored to serve a compelling governmental interest.").

A

The district court did not err in concluding that neither the single-subject nor description-of-effect requirement constitutes a direct regulation of core political speech or imposes a severe burden on the PEST Committee's First Amendment rights.

**[5]** The Nevada requirements are *prerequisites* to the circulation of initiative and referendum petitions. They do not implicate protections for core political speech because they do not directly affect or even involve one-on-one communications with voters. *See Nevadans for the Protection of Property Rights, Inc. v. Heller*, 141 P.3d 1235, 1243 (Nev. 2006) ("Nevada's single-subject requirement does not prevent petitioners from addressing multiple subjects and thereby restrict the quantum of speech. It simply requires petitioners to address separate subjects in separate petitions."). Instead, the district court correctly concluded that the requirements advance Nevada's important interests in avoiding confusion, promoting informed decision-making, and preventing "logrolling."[4] The provisions represent a permissible regulation of the mechanics of the electoral process. They do not, in and of themselves, have the effect of limiting the overall quantum of speech available to the electorate.

As Amici point out in their brief, both the Tenth Circuit and the Eleventh Circuit have upheld the constitutionality of single-subject requirements. Amicus Br. at 3. In *Biddulph v. Mortham*, 89 F.3d 1491 (11th Cir. 1996), the Eleventh Circuit explained:

> We hold that a state's broad discretion in administering its initiative process is subject to strict scrutiny only in certain narrow circumstances. We obviously would be concerned about free speech and freedom-of-association rights were a state to enact initiative regulations that were content based or had a disparate impact on certain political viewpoints. We also would be troubled were a state to apply facially neu-

---

[4]The Nevada Supreme Court has defined "logrolling" as the use of initiatives that lead petition signators and voters to "sign[ ] or vot[e] for a multifaceted petition in order to effect at least one element of change." *Nevadans for the Protection of Property Rights, Inc. v. Heller*, 141 P.3d 1235, 1251 (Nev. 2006).

tral regulations in a discriminatory manner. *See Tax-payers United for Assessment Cuts v. Austin*, 994 F.2d 291, 297 (6th Cir.1993) (holding that the First Amendment Free Speech Clause does not constrain a state's ability to regulate its own initiative process as long as the state does not elect or enforce initiative procedures in a discriminatory or content-based manner). Nor, as *Meyer* [*v. Grant*, 486 U.S. 414 (1988)] held, could a state impermissibly burden the free exchange of ideas about the objective of an initiative proposal. Most restrictions a state might impose on its initiative process would not implicate First Amendment concerns.

The restriction at issue in this case is not subject to strict scrutiny. . . . Rather, Biddulph solely contends that Florida's process is burdensome because it is unpredictable and imposes unnecessary costs on initiative sponsors. But the Constitution does not require Florida to structure its initiative process in the most efficient, user-friendly way possible.

*Id.* at 1500-01 (footnotes omitted). Similarly, in *Campbell*, the Tenth Circuit determined that Colorado's single-subject and other "title setting" requirements were not subject to strict scrutiny because

the balancing test is a general approach our court and the Supreme Court have employed in deciding the constitutionality of content-neutral regulation of the voting process. A balancing test takes account of the Supreme Court's recognition that, as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes.

Strict or exacting scrutiny has been employed in circumstances not presented in the pending case. The

cases discussed above [*e.g., McIntyre, Meyer, and Buckley*] which applied strict scrutiny do not lend themselves to a simple synthesis. As we read them, however, strict scrutiny is applied where the government restricts the overall quantum of speech available to the election or voting process. More particularly, strict scrutiny is employed where the quantum of speech is limited due to restrictions on campaign expenditures, as in *Valeo*, the available pool of circulators or other supporters of a candidate or initiative, as in *ACLF* and *Meyer*, or the anonymity of such supporters, as in *ACLF*, *Valeo*, and *McIntyre v. Ohio Elections Comm'n*.

*Campbell*, 203 F.3d at 745 (internal quotation marks omitted).

**[6]** Nevada's single-subject and description-of-effect requirements are content neutral. The PEST Committee has failed to demonstrate that they are applied in a discriminatory manner. Accordingly, the district court did not err in applying the more flexible balancing test to those requirements and determining that they serve important state interests. *See, e.g., Las Vegas Taxpayer Accountability Comm. v. City Council of the City of Las Vegas*, 208 P.3d 429, 436-37 (Nev. 2009) ("[T]he single-subject requirement helps both in promoting informed decisions and in preventing the enactment of unpopular provisions by attaching them to more attractive proposals or concealing them in lengthy, complex initiatives (*i.e.*, log-rolling).").

B

**[7]** The district court's analysis of the pre-election challenge provision presents a somewhat closer question because the PEST Committee did present evidence tending to show that challenges by opponents have tied initiative petitions up in litigation for extended periods of time or that, in some cases, they have left the proponents without sufficient time to

gather signatures in advance of the filing deadlines for a particular election cycle. Although it is the actual circulation process (and the attendant one-on-one communication with potential voters) that has been determined to be "core political speech," the fact that the pre-election challenges may, in some cases, prevent petitions from being placed on the ballot could be viewed as implicating core political speech concerns. However, the PEST Committee has not established that Nevada's process for preparing an initiative or referendum petition for circulation constitutes, or otherwise directly affects, the type of "interactive communication concerning political change" that is properly considered core political speech. The pre-election challenge procedure does not involve one-on-one communication with voters, and the PEST Committee has not argued or demonstrated that initiative or referendum proponents have, or should have, a right to engage in one-on-one communication with voters about their political ideas before Nevada's single-subject and description-of-effect requirements are satisfied. Accordingly, the pre-election challenge procedure does not implicate core political speech, and the remaining inquiry is whether it imposes a severe burden on speech by restricting the overall quantum of speech available to Nevada's electorate.

**[8]** Assuming that pre-election challenges may burden First Amendment rights in that they may delay or, in some cases, prevent the circulation of initiative or referendum petitions in a particular election cycle, the PEST Committee identifies no basis for determining that permitting political opponents to vet petitions for compliance with the single-subject and description-of-effect requirements functions in anything other than a content-neutral and non-discriminatory manner. In any event, whatever burden there may be was not created by the statute. Section 295.061 does not create a new right of action. As the district court explained:

> In *Herbst Gaming, Inc. v. Heller*, the Nevada
> Supreme Court reiterated that Nevada courts — like

the majority of jurisdictions — are authorized to hear pre-election challenges that allege that a petition violates procedural requirements or includes inappropriate subject matter. 122 Nev. 877, 141 P.3d 1224, 1228 (2006). Thus for example, in the 2006 case of *Nevadans for Property Rights v. Heller*, Nevada courts properly heard a legal challenge based on NRS 295.009's single-subject requirement even though the single-subject requirement was not brought within the ambit of NRS 295.061 until a year later. 122 Nev. 894, 141 P.3d 1235, 1245 (2006); 2007 Nev. Stat. 1251. . . . Consequently, Plaintiffs' asserted interpretation-that NRS 295.061 creates a private right of action-is inconsistent with the widespread practice in Nevada courts of hearing pre-election challenges where no specific statute authorizes such challenges.

Aug. 13, 2009 Order at 17-18 (footnotes omitted). Rather, the pre-election challenge provision codifies and, in fact, imposes limits on, the use of the existing common law writ process. S*ee* Appellee's Br. at 33 ("The provision limiting pre-petition challenge to 15 days is a rule to establish an orderly process in place of the alternative, which would be an undefined writ petition process."). Additionally, as the district court observed, the choices and the conduct of ballot initiative proponents appear to have played a role in preventing at least some petitions from ultimately being placed on the ballot. Aug. 13, 2009 Order at 18 (suggesting that initiative proponents "would be wise in the future to avoid repeatedly withdrawing and refiling their petitions, thereby allowing their opponents to bring repeat legal challenges"). Stated otherwise, the PEST Committee has not demonstrated that, in light of Nevada's entire statutory scheme regulating ballot access, taken separately or together, the single-subject, description-of-effect, and pre-election challenge provisions prevent reasonably diligent ballot initiative and referenda proponents from gaining a place on the ballot. The district court did not

err in applying a flexible balancing test to the pre-election challenge provision and, as such, was not obliged to consider whether Nevada's system could or should be more narrowly tailored. *Cf. Buckley*, 525 U.S. at 191-92 ("As the Tenth Circuit recognized . . . States allowing ballot initiatives have considerable leeway to protect the integrity and reliability of the initiative process, as they have with respect to election processes generally." (citing *Biddulph*, 89 F.3d at 1494, 1500-01)).

IV

The PEST Committee also asserts that the district court erred in not finding that the single-subject and description-of-effect requirements are both vague and unconstitutionally overbroad. The PEST Committee characterizes its vagueness and overbreadth arguments as "as applied" challenges.

The district court addressed and rejected the PEST Committee's challenge to the single-subject requirement as unconstitutionally vague. The PEST Committee also challenged Nevada's single-subject requirement, in its motion for partial summary judgment, as overbroad and the description-of-effect requirement as both vague and overbroad. The district court did not address those issues in its August 13, 2009 order. Although the district court did not address these arguments, they are preserved for appeal. *See In re E.R. Fegert, Inc.*, 887 F.2d 955, 957 (9th Cir. 1989) (explaining that appellate courts may consider an argument "raised sufficiently for the trial court to rule on it").

The district court rejected the PEST Committee's vagueness argument in connection with the single-subject requirement for two reasons. First, "single-subject requirements have been upheld by several other jurisdictions." Aug. 13, 2009 Order at 16 (citing *Campbell*, 203 F.3d 738 (10th Cir. 2000); *Biddulph*, 89 F.3d 1491 (11th Cir. 1996); and *Wasson v. Oregon*, 2005 WL 711683 (D. Or. 2005)). Second, the district

court explained that "although courts are generally concerned that vague laws will chill constitutionally protected speech, a single-subject requirement, even if strictly enforced, is unlikely to chill speech. Rather, it forces proponents to bring multiple initiatives in order to legislate on multiple issues." *Id.* at 16-17 (internal citations omitted).

**[9]** The constitutionality of a state law that operates in the area of First Amendment freedoms may be attacked as overbroad or vague:

> First, the overbreadth doctrine permits the *facial* invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when judged in relation to the statute's plainly legitimate sweep. Second, even if an enactment does not reach a substantial amount of constitutionally protected conduct, it may be impermissibly vague because it fails to establish standards for the police and public that are sufficient to guard against the arbitrary deprivation of liberty interests.

*City of Chicago v. Morales*, 527 U.S. 41, 52 (1999) (emphasis added) (internal citations and quotation marks omitted) (outlining standards for facial challenges); *see also Kolender v. Lawson*, 461 U.S. 352, 358 n.8 (1983) (noting that the Supreme Court has "traditionally viewed vagueness and overbreadth as logically related and similar doctrines").

## A

In connection with its vagueness challenge, the PEST Committee argues that: (a) the statutory provision defining the term "one subject" to mean that "the parts of the proposed initiative" are "functionally related and germane to each other" is unconstitutionally vague because it provides insufficient guidance to proponents of ballot initiatives as well as to courts

that interpret them; and (b) the description-of-effect require-ment similarly provides "[n]o additional guidance" for the terms used in that section. Appellants' Opening Br. at 40-47.

**[10]** A statute challenged for vagueness may be "judged on an as-applied basis." *Maynard*, 486 U.S. at 361. "To deter-mine whether a statute is unconstitutionally vague as applied, a two-part test is used: a court must first determine whether the statute gives the person of ordinary intelligence a reason-able opportunity to know what is prohibited and then consider whether the law provides explicit standards for those who apply it." *U.S. v. Strauss*, 999 F.2d 692, 697-98 (2d Cir. 1993) (internal citations, quotations, and alterations omitted). "Ob-jections to vagueness . . . rest on the lack of notice, and hence may be overcome in any specific case where reasonable per-sons would know that their conduct is at risk." *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988). "[W]here a statute imposes criminal penalties, the standard of certainty is higher." *Kolender*, 461 U.S. at 358 n.8.

**[11]** Here, the district court did not err in determining that Nevada's single-subject requirement is not impermissibly vague as applied. The terms "single subject" and "description of effect" are not in and of themselves "so lacking in meaning as to be invalid." *Cf. Textile Workers Pension Fund v. Stan-dard Dye & Finishing Co.*, 725 F.2d 843, 855-56 (2d Cir. 1984) (subjecting statutes governing economic regulation to less stringent vagueness tests than those governing constitu-tionally protected rights). Section 295.009(2) includes a defi-nition of "single subject" that provides comprehensible guidance about the nature and purpose of the term. Nev. Rev. Stat 295.009(2) ("[A] petition . . . embraces but one subject and matters necessarily connected therewith and pertaining thereto, if the parts of the proposed initiative or referendum are functionally related and germane to each other in a way that provides sufficient notice of the general subject of, and of the interests likely to be affected by, the proposed initiative or referendum.").

**[12]** The mere fact that some initiative and referenda petitions have been successfully challenged as violative of the single-subject or description-of-effect provisions does not establish that individuals or courts are unable to discern what is required or that the provisions are "so standardless that [they] authorize[ ] or encourage[ ] seriously discriminatory enforcement." *U.S. v. Williams*, 553 U.S. 285, 304-05 (2008) (citing *Hill v. Colorado*, 530 U.S. 703, 732 (2000)). Although Nevada's courts have not yet reached a perfectly uniform approach to analyzing the application of the single-subject and description-of-effect requirements, the lack of "perfect clarity and precise guidance" is not a sufficient basis for declaring the provisions unconstitutionally vague. *Id.* (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989)). Stated otherwise, evidence that some ballot petitions have been successfully challenged does not demonstrate that the language of either the single-subject or the description-of-effect requirement is insufficient to provide persons of ordinary intelligence a reasonable opportunity to understand what is required for ballot initiatives and referenda, and the language of the statutory requirements provides sufficiently explicit standards for judges charged with reviewing their application.

B

In connection with its overbreadth challenge, the PEST Committee asserts that the application of the single-subject and description-of-effect requirements "ha[s] acted to chill the legitimate speech of those who sought to take advantage of their constitutional right to bring ballot initiatives before the public." Appellants' Br. at 50.

**[13]** Where a law's broad sweep inhibits the exercise of protected First Amendment rights, it is deemed overbroad; and it will be struck down in its entirety if its overbreadth is "not only . . . real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Okla-*

*homa*, 413 U.S. 601, 615 (1973). "In addressing . . . a facial overbreadth challenge, a court's first task is to ascertain whether the enactment reaches a substantial amount of constitutionally protected conduct." *Boos v. Barry*, 485 U.S. 312, 329 (1988). The Supreme Court has explained that the doctrine of overbreadth

> seeks to strike a balance between competing social costs. *Virginia v. Hicks*, 539 U.S. 113, 119-120, 123 S. Ct. 2191, 156 L. Ed.2d 148 (2003). On the one hand, the threat of enforcement of an overbroad law deters people from engaging in constitutionally protected speech, inhibiting the free exchange of ideas. On the other hand, invalidating a law that in some of its applications is perfectly constitutional . . . has obvious harmful effects. In order to maintain an appropriate balance, we have vigorously enforced the requirement that a statute's overbreadth be substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep.

*Williams*, 553 U.S. at 292-93 (2008); *see also Virginia v. Hicks*, 539 U.S. 113, 122 (2003) (explaining that the overbreadth doctrine applies where the challenged law or policy "taken as a whole, is substantially overbroad judged in relation to its plainly legitimate sweep" and that "[t]he overbreadth claimant bears the burden of demonstrating, from the text of the law and from actual fact, that substantial overbreadth exists") (internal quotations, citations, and alterations omitted).

**[14]** Read in the context of Nevada's legitimate interests and the statute's plainly legitimate sweep, each challenged statutory provision "communicates its reach in words of common understanding." *Boos*, 485 U.S. at 332. Any purported "overbreadth" inherent in the single-subject and the description-of-effect requirements cannot reasonably be said to be "substantial" in any absolute sense or in relationship to

Nevada's interest in regulating its electoral process, because the requirements do not have the effect of thwarting all attempts to place initiatives and referenda before the voters. *See C & C Plywood Corp. v. Hanson*, 583 F.2d 421, 425 (9th Cir. 1978) (declaring unconstitutional a Montana law that prohibited all corporate contributions in support of or opposition to ballot issues, explaining that "[i]t is not minimally regulatory but totally prescriptive and therefore overbroad"). We are persuaded that the PEST Committee has not demonstrated that Nevada's single-subject or description-of-effect requirements are unconstitutionally overbroad.

## Conclusion

We affirm the district court's grant of summary judgment in favor of the Secretary of State because the district court did not err in applying the more flexible balancing test that is appropriate for challenges to state election laws that impose a less severe burden on First Amendment rights, and in concluding that the single-subject and description-of-effect requirements, Nev. Rev. Stat. 295.009, are not unconstitutionally vague or overbroad.

**AFFIRMED**.