SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

## Viktoriya Usachenok v. State of New Jersey, Department of the Treasury
### (A-40-22) (086861)

**Argued January 3, 2024 -- Decided May 6, 2024**

**RABNER, C.J., writing for a unanimous Court.**

In this appeal, the Court considers the constitutionality of a regulation that applies to harassment and discrimination investigations in State workplaces. Part of the regulation requires State investigators to "request" that anyone interviewed "not discuss any aspect of the investigation with others." N.J.A.C. 4A:7-3.1(j).

In May 2016, plaintiff Viktoriya Usachenok filed an internal complaint with the Department of Treasury claiming that her supervisor sexually harassed her and subjected her to a hostile work environment. Consistent with the text of N.J.A.C. 4A:7-3.1(j) at the time, the EEO/AA investigator directed Usachenok not to discuss the investigation with others and had her sign a form to acknowledge that directive. After Usachenok asked her husband, an attorney, about whether to sign a particular document related to the investigation, the investigator accused Usachenok of violating the confidentiality directive and threatened she could be fired. Usachenok filed a complaint that, among other claims, challenged the confidentiality directive.

The version of N.J.A.C. 4A:7-3.1(j) then in effect included the following language: "All persons interviewed, including witnesses, shall be directed not to discuss any aspect of the investigation with others in light of the important privacy interests of all concerned. Failure to comply with this confidentiality directive may result in administrative and/or disciplinary action, up to and including termination."

While this appeal was pending in the Appellate Division, the Civil Service Commission amended the regulation. The relevant portion of N.J.A.C. 4A:7-3.1(j) now provides that "the EEO/AA Officer/investigator shall request that all persons interviewed, including witnesses, not discuss any aspect of the investigation with others, unless there is a legitimate business reason to disclose such information."

The Appellate Division rejected Usachenok's constitutional challenge to the current regulation, focusing on the change from a directive to a permissive "request" through the amendment. The Court granted certification. 253 N.J. 579 (2023).

1

**HELD:** The State Constitution guarantees an affirmative right to speak freely. N.J. Const. art. I, ¶ 6. The guarantee extends to victims of harassment and discrimination who have a right to speak out about what happened to them. Although N.J.A.C. 4A:7-3.1(j) seeks to advance legitimate interests -- "to protect the integrity of the investigation, minimize the risk of retaliation . . . , and protect the important privacy interests of all concerned" -- it reaches too far in trying to achieve those aims and chills constitutionally protected speech. The rule is overbroad under the State Constitution, and the Court strikes the relevant part of the regulation.

1. New Jersey's Constitution provides broader protection for free expression than the Federal Constitution and practically all others in the nation. (pp. 12-13)

2. The overbreadth doctrine considers the extent of a law's deterrent effect on legitimate expression. A law is facially invalid on overbreadth grounds if the statute prohibits a substantial amount of protected speech relative to its plainly legitimate sweep. The United States Supreme Court's application of the overbreadth doctrine in United States v. Stevens illustrates the principle. The Court found that the statute challenged in that case created an offense "of alarming breadth" because, although it purported to criminalize animal cruelty, the statute did not actually require "that the depicted conduct be cruel," such that hunting periodicals could run afoul of the law. 559 U.S. 460, 474-76 (2010). The Court explained that it "would not uphold an unconstitutional statute based on the Government's representation that it would use the statute "to reach only 'extreme' cruelty," and that it could not rewrite the statute "to conform it to constitutional requirements." Id. at 480-81. Because "the presumptively impermissible applications of [the law] far outnumber[ed] any permissible ones," the Court held that the law was "substantially overbroad, and therefore invalid under the First Amendment." Id. at 481-82. (pp. 14-17)

3. Consistent with the Supreme Court's approach, the "first step" in this appeal is to examine the text of the regulation to construe its scope. See id. at 474. The critical language in N.J.A.C. 4A:7-3.1(j) has few, if any, limits. It directs state actors to ask victims and witnesses not to speak with anyone about any aspect of any investigation into harassment or discrimination. That request encompasses a great deal of protected speech, and it has no time limit. One exception appears in the text of the rule -- victims and witnesses can disclose information if "there is a legitimate business reason to" do so -- but the regulation does not offer guidance about what that means. And the regulation does not require that victims be told they are free to decline to follow the request, that they can consult with an attorney about it, or that there will be no repercussions if they exercise their protected right to free speech. Although framed as a request, there is an inherent power imbalance between the investigator who makes the request and the witness who hears it, with the result that many employees will undoubtedly give up their right to speak freely. (pp. 17-20)

2

4.  Counsel for the Attorney General proposed revisions that would help address the regulation's broad scope, but the Court cannot expand and rewrite the final sentence to render it constitutional.  Id. at 481.  The regulation is unconstitutionally overbroad.  The Court acknowledges the State's good-faith representations that the regulation can be narrowed, but it cannot rely on those representations to uphold the rule.  See id. at 480.  The Court strikes the last sentence of N.J.A.C. 4A:7-3.1(j) on overbreadth grounds based on the broad protections in the State Constitution.  The Court explains why its opinion in R.M. v. Supreme Court of New Jersey, 185 N.J. 208 (2005), does not alter its analysis here.  (pp. 20-22)

5.  In striking part of the regulation, the Court does not question the principles the regulation tries to foster.  The concerns addressed by confidentiality are entirely legitimate and are also important considerations in criminal and internal affairs investigations.  The Court stresses that nothing in its opinion should be construed to limit requests for confidentiality by investigators in those settings.  (pp. 22-23)

**REVERSED.  The last sentence of N.J.A.C. 4A:7-3.1(j) is STRICKEN. The matter is REMANDED to the trial court for further proceedings.**

**JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, FASCIALE, and NORIEGA join in CHIEF JUSTICE RABNER's opinion.  JUSTICE WAINER APTER did not participate.**

SUPREME COURT OF NEW JERSEY
A-40 September Term 2022
086861

Viktoriya Usachenok,

Plaintiff-Appellant,

v.

State of New Jersey
Department of the
Treasury, John Mayo,
Bulisa Sanders and
Deirdre Webster Cobb,

Defendants-Respondents.

On certification to the Superior Court,
Appellate Division.

Argued
January 3, 2024

Decided
May 6, 2024

Andrew Dwyer argued the cause for appellant (Smith Eibeler, James M. Curran, and The Dwyer Law Firm, attorneys; Christopher J. Eibeler, of counsel and on the briefs, and Lisa A. Hernandez, Devin T. Russo, and James M. Curran, on the briefs).

Donna Arons, Assistant Attorney General, argued the cause for respondents (Matthew J. Platkin, Attorney General, attorney; Donna Arons, of counsel, and Adam Robert Gibbons, Nicole Adams, Adam Marshall, and Levi Klinger-Christiansen, Deputy Attorneys General, on the briefs).

1

Julie A. Murray (American Civil Liberties Union Foundation) of the District of Columbia and New York bars, admitted pro hac vice, argued the cause for amici curiae American Civil Liberties Union of New Jersey and American Civil Liberties Union (American Civil Liberties Union of New Jersey Foundation, and American Civil Liberties Union Foundation, attorneys; Alexander Shalom, Jeanne LoCicero, Julie A. Murray, and Gillian Thomas (American Civil Liberties Union Foundation) of the New York bar, admitted pro hac vice, on the brief).

CHIEF JUSTICE RABNER delivered the opinion of the Court.

In this appeal, we consider the constitutionality of a regulation that applies to harassment and discrimination investigations in State workplaces. Part of the regulation requires State investigators to "request" that anyone interviewed "not discuss any aspect of the investigation with others." N.J.A.C. 4A:7-3.1(j).

The regulation's request for confidentiality has a broad sweep. Investigators must ask all victims and witnesses who are interviewed not to speak to others -- in other words, not to a spouse, an attorney, or the public. And the regulation has no time limit; the request extends indefinitely, even after an investigation has ended.

An exception in the regulation allows victims and witnesses to disclose information if "there is a legitimate business reason to" do so. Ibid. But the phrase is not defined, and a reasonable person would find it difficult to

2

understand what the vague language means.  In addition, investigators are not required to tell victims and witnesses that they are free to disregard the State's request.

In this case, an employee of the Department of Treasury lodged an internal complaint that her manager sexually harassed her at work. Investigators interviewed her and, consistent with the version of the regulation then in effect, directed her not to discuss the investigation with anyone.

The Civil Service Commission (CSC) amended the regulation afterward. It now calls on investigators to "request," not "direct," that victims and witnesses remain silent about all aspects of the investigation.  Ibid.  Plaintiff's complaint in this appeal seeks a declaratory judgment that the current regulation is unconstitutional.

The State Constitution guarantees an affirmative right to speak freely that is broader than the protections in the First Amendment.  Compare N.J. Const. art. I, ¶ 6, with U.S. Const. amend. I.  The guarantee extends to victims of harassment and discrimination who have a right to speak out about what happened to them.

Although the regulation seeks to advance legitimate interests -- "to protect the integrity of the investigation, minimize the risk of retaliation . . . , and protect the important privacy interests of all concerned," N.J.A.C. 4A:7-

3

3.1(j), it reaches too far in trying to achieve those aims and chills constitutionally protected speech. We therefore hold that the rule is overbroad under the State Constitution. As a result, we reverse the judgment of the Appellate Division and strike the relevant part of the regulation.

## I.

To recount the facts, we rely on the assertions in plaintiff Viktoriya Usachenok's fourth amended complaint but make no findings of fact.

In May 2016, Usachenok filed an internal complaint with the Equal Employment Opportunity and Affirmative Action (EEO/AA) office in the Department of Treasury. She claimed her supervisor John Mayo sexually harassed her and subjected her to a hostile work environment.

Bulisa Sanders, an EEO/AA investigator, and her supervisor, Deirdre Webster Cobb, met with Usachenok to investigate the complaint. At the meeting, Usachenok stated that Mayo made sexual advances toward her, gave her unwanted gifts and love letters, and engaged in other inappropriate behavior. Consistent with the text of N.J.A.C. 4A:7-3.1(j) (the "regulation" or "paragraph (j)") at the time, Sanders directed Usachenok not to discuss the investigation with others and had her sign a form to acknowledge the confidentiality directive. Sanders also advised Usachenok that she could be disciplined if she violated the directive.

4

According to Usachenok, at a meeting in June 2016, Sanders asked her to sign a statement the investigators had prepared that summarized her allegations. After reading the statement, Usachenok said it needed to be changed "to accurately reflect her complaints." When Sanders declined to make the changes, Usachenok asked if she could call her husband. Her husband, an attorney, advised her not to sign the document. According to Usachenok, Sanders then accused her of violating the confidentiality directive and threatened that she could be fired.

In late August 2016, Usachenok received a letter from another Treasury investigator that allegedly confirmed some but not all of her claims against Mayo.

Usachenok filed a complaint against the Department of Treasury, Mayo, Sanders, and Cobb on July 21, 2017. The fourth amended complaint alleged a hostile work environment, retaliation, and discrimination, among other claims. Relevant to this appeal, the complaint also challenged the confidentiality directive in N.J.A.C. 4A:7-3.1(j).

On October 29, 2018, Usachenok filed an order to show cause and sought an order declaring the confidentiality directive of paragraph (j) null and void. Because the allegation challenged the validity of a rule promulgated by a state agency, the State moved to transfer that part of the amended complaint to

5

the Appellate Division, pursuant to <u>Rules</u> 1:13-4 and 2:2-3(a).  The trial court granted the request.

II.

To provide context for what follows, we outline the regulation and its history here.

The regulation stems from Executive Order No. 106, which Governor Christine Todd Whitman issued in 1999.  <u>Exec. Order No. 106</u> (Dec. 17, 1999), 32 N.J.R. 139(a) (Jan. 18, 2000).  The Executive Order stressed the importance of prohibiting discrimination, harassment, or hostile environments in the workplace.  <u>Ibid.</u>  It also emphasized the need for model procedures to handle internal complaints.  <u>Ibid.</u>  To achieve those aims, the Governor put into effect a policy submitted by the Department of Personnel.  <u>Ibid.</u>

The Executive Order led to various changes to N.J.A.C. 4A:7.  Among other amendments, N.J.A.C. 4A:7-3.1(i) was added.  It stated that, "[t]o the extent practical and appropriate under the circumstances, confidentiality shall be maintained throughout the investigatory process."  34 N.J.R. 261(a) (Jan. 7, 2002).  The regulation added that "[a]ll persons interviewed shall be directed not to discuss any aspect of the investigation with others" and that "[f]ailure to comply with this confidentiality directive may result in disciplinary action." <u>Ibid.</u>

6

In 2007, those confidentiality requirements were re-codified at N.J.A.C. 4A:7-3.1(j) with minor changes. See 39 N.J.R. 3499(a) (Aug. 20, 2007). At the time, paragraph (j) continued to mandate confidentiality and warn of disciplinary action. It read in full as follows:

> All complaints and investigations shall be handled, to the extent possible, in a manner that will protect the privacy interests of those involved. To the extent practical and appropriate under the circumstances, confidentiality shall be maintained throughout the investigatory process. In the course of an investigation, it may be necessary to discuss the claims with the person(s) against whom the complaint was filed and other persons who may have relevant knowledge or who have a legitimate need to know about the matter. All persons interviewed, including witnesses, shall be directed not to discuss any aspect of the investigation with others in light of the important privacy interests of all concerned. Failure to comply with this confidentiality directive may result in administrative and/or disciplinary action, up to and including termination of employment.
>
> [N.J.A.C. 4A:7-3.1(j) (2007) (emphases added).]

In 2019, while this appeal was pending, the CSC proposed to amend paragraph (j). 51 N.J.R. 1311(a) (Aug. 19, 2019). The amendment, adopted in March 2020, made two notable changes: (1) it removed language that mandated witnesses "be directed" not to speak with others and instead mandated that they be "request[ed]" not to do so; and (2) it eliminated the

7

rule's last sentence, which threatened disciplinary action. 52 N.J.R. 887(a) (Apr. 20, 2020). In proposing the change, the CSC stated investigators would "advise" people interviewed during an investigation "why it is important not to disclose any aspect of the investigation to other persons without a legitimate and substantial business justification." 51 N.J.R. 1311(a). The proposal also explained that warning of "the imposition of a penalty could have a chilling effect on potential claimants." Ibid.

Paragraph (j) now reads as follows:

> All complaints and investigations shall be handled, to the extent possible, in a manner that will protect the privacy interests of those involved. To the extent practical and appropriate under the circumstances, confidentiality shall be maintained throughout the investigative process.[1] In the course of an investigation, it may be necessary to discuss the claims with the person(s) against whom the complaint was filed and other persons who may have relevant knowledge or who have a legitimate need to know about the matter. In order to protect the integrity of the investigation, minimize the risk of retaliation against the individuals participating in the investigative process, and protect the important privacy interests of

---

[1] Because the second sentence of paragraph (j) is directed to the agency and its personnel, as opposed to victims and witnesses, we do not address it further. We also accept the State's representation that other sections of the regulation that discuss disciplinary action generally do not apply to paragraph (j). See, e.g., N.J.A.C. 4A:7.31(d) and (k). For similar reasons, we do not adopt the argument that the general language in N.J.A.C. 4A:2-2.3(a)(1) (failure to perform duties), (2) (insubordination), or (12) (other sufficient cause) provides a basis for disciplinary action with regard to paragraph (j).

8

all concerned, <u>the EEO/AA Officer/investigator shall request that all persons interviewed, including witnesses</u>, not discuss any aspect of the investigation with others, unless there is a legitimate business reason to disclose such information.

[N.J.A.C. 4A:7-3.1(j) (effective Apr. 20, 2020) (emphasis added).]

### III.

The Appellate Division rejected Usachenok's constitutional challenge to the current regulation.

The appellate court focused on the following language in paragraph (j): "the EEO/AA Officer/investigator <u>shall request</u> that all persons interviewed, including witnesses, not discuss any aspect of the investigation." (emphasis added). The court found that "the plain language . . . does not restrict speech and does not constitute an improper prior restraint of speech."

At the same time, the Appellate Division recognized that the word "request" may be considered a command depending upon the context in which it is used. Citing the CSC's amendment to the regulation -- which replaced the term "direct[]" with "request" -- the court observed that "the intent . . . was to eliminate a confidentiality requirement and its potential chilling effect . . . and replace[] it with a permissive 'request.'" The appellate court explained that the exception in the regulation -- for when "there is a legitimate business

9

reason to disclose . . . information" -- further supports the permissive nature of the request.

The Appellate Division also concluded that the amended regulation did not violate the public policies underlying the Law Against Discrimination (LAD). In doing so, the court stressed the important values behind a request for confidentiality: to "promote[] a fair investigatory process that protects both the accuser and the accused while respecting the free-speech rights of all."

The Appellate Division ultimately remanded the case to the trial court and directed it to enter an order dismissing Usachenok's challenge to the regulation.

We granted Usachenok's petition for certification. 253 N.J. 579 (2023). We also granted leave to participate as a friend of the Court to the American Civil Liberties Union of New Jersey and the American Civil Liberties Union (jointly, the ACLU).

IV.

Usachenok contends the Appellate Division did not analyze whether the regulation has a chilling effect on an employee's right to free speech. She maintains the State's intent in drafting the amendment does not answer that critical question, and that paragraph (j) operates as an unconstitutional restraint

10

on speech. Usachenok also argues the current regulation is overbroad and vague, and that it violates the LAD. In addition, citing Stericycle, Inc. & Teamsters Local 628, 372 N.L.R.B. No. 113 (2023), Usachenok asks this Court to adopt a balancing test to determine the validity of confidentiality regulations.

The State argues that "because the request is truly a request, neither the State nor Federal Constitution is implicated." Both the language of the regulation and its context, according to the State, make clear that no adverse consequences follow from declining the request. The State asserts that the amendment is a permissible expression of the government's viewpoint that confidentiality will protect the integrity of an investigation. The State therefore maintains there is no basis to invalidate the regulation or promulgate a new test. In addition, the State submits that nothing in the State Constitution or the LAD calls for a different outcome.

The ACLU stresses that the New Jersey Constitution provides broader protection than the First Amendment and affords an independent ground to uphold Usachenok's constitutional claim. Merely because the regulation "requests" confidentiality, the ACLU submits, does not insulate it from constitutional scrutiny. The ACLU also asks the Court to adopt its own balancing standard for public-employee speech claims.

11

We granted Usachenok's motion to expand the record. 252 N.J. 379 (2022). Because we do not rely on the additional information submitted, we do not reference the parties' arguments relating to it.

V.

Usachenok contends that the amended regulation violates her right to speak freely under the State Constitution. We review constitutional challenges to statutes and regulations de novo. See State v. Hill, 256 N.J. 266, 280 (2024) (statute); Ran-Dav's Cnty. Kosher, Inc. v. State, 129 N.J. 141, 167 (1992) (regulation). And we construe "regulation[s] to render [them] constitutional if [they are] reasonably susceptible to such a construction." Karins v. City of Atlantic City, 152 N.J. 532, 546 (1998).

A.

The State Constitution provides broader protection for free expression than the Federal Constitution does.

The First Amendment to the United States Constitution, applied to the states by the Due Process Clause of the Fourteenth Amendment, directs that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I; Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., 585 U.S. 878, 891-92 (2018).

12

New Jersey's Constitution "guarantees a broad affirmative right to free speech." Dublirer v. 2000 Linwood Ave. Owners, Inc., 220 N.J. 71, 78 (2014). Article I, Paragraph 6 provides that "[e]very person may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right. No law shall be passed to restrain or abridge the liberty of speech or of the press." N.J. Const. art. I, ¶ 6. That language has been described as "broader than practically all others in the nation." Green Party v. Hartz Mountain Indus., Inc., 164 N.J. 127, 145 (2000).

The "State Constitution's free speech clause is generally interpreted as co-extensive with the First Amendment." E & J Equities, LLC v. Bd. of Adjustment of Franklin, 226 N.J. 549, 568 (2016) (quoting Township of Pennsauken v. Schad, 160 N.J. 156, 176 (1999)). As a result, principles of federal constitutional law, in general, help guide our analysis. Ibid.

At the same time, we have found that the New Jersey Constitution affords greater protection than federal law in certain areas relating to free speech. See, e.g., Mazdabrook Commons Homeowners' Ass'n v. Khan, 210 N.J. 482, 493 (2012) (quoting N.J. Coalition Against War in the Middle East v. J.M.B. Realty Corp., 138 N.J. 326, 353 (1994) (private action in addition to state action); Dublirer, 220 N.J. at 79 (same); W.J.A. v. D.A., 210 N.J. 229, 242 (2012) (defamation).

13

B.

We focus on paragraph (j) to assess Usachenok's facial constitutional challenge. Usachenok contends the regulation is unconstitutionally overbroad.

"Overbroad laws 'may deter or "chill" constitutionally protected speech[.]'" United States v. Hansen, 599 U.S. 762, 769-70 (2023) (quoting Virginia v. Hicks, 539 U.S. 113, 119 (2003)); Hill, 256 N.J. at 282-83. In those situations, "would-be speakers [may] remain silent," and "society" would then "lose their contributions to the 'marketplace of ideas.'" Hansen, 599 U.S. at 770 (quoting Hicks, 539 U.S. at 119). The overbreadth doctrine thus considers the extent of a law's "deterrent effect on legitimate expression." State v. Hoffman, 149 N.J. 564, 582 (1997) (internal quotation omitted).

As this Court recently observed, "[o]verbreadth is unlike a typical facial challenge." Hill, 256 N.J. at 283. "[I]t does not require a challenger to 'establish that no set of circumstances exists under which [a statute] would be valid.'" Ibid. (quoting Hansen, 599 U.S. at 769). Courts may find that a law is facially invalid on overbreadth grounds "[i]f the challenger demonstrates that the statute 'prohibits a substantial amount of protected speech' relative to its 'plainly legitimate sweep.'" Hansen, 599 U.S. at 770 (quoting United States v. Williams, 553 U.S. 285, 292 (2008)); accord Hill, 256 N.J. at 283; United States v. Stevens, 559 U.S. 460, 473 (2010).

14

When a court holds a law facially unconstitutional under the overbreadth doctrine, all enforcement of the law is suspended. Hicks, 539 U.S. at 119. To justify that outcome, the "law's unconstitutional applications must be realistic, not fanciful," and they "must be substantially disproportionate to the statute's lawful sweep." Hansen, 599 U.S. at 770; Hill, 256 N.J. at 283.

The United States Supreme Court's application of the overbreadth doctrine in Stevens illustrates the principle. In that case, the Court reviewed a federal law that made it a crime to "create[], sell[], or possess[] a depiction of animal cruelty," if done for "commercial gain." 559 U.S. at 464-65 (citing 18 U.S.C. § 48(a)). The statute defined "depiction of animal cruelty" as any depiction "in which a living animal is intentionally maimed, mutilated, tortured, wounded, or killed, if such conduct" violated federal law or a law in the state where "the maiming, mutilation, torture, wounding, or killing took place." Id. at 465 n.1. The law's primary intent, based on the legislative history, was to address "crush videos" that depicted "the intentional torture and killing of helpless animals." Id. at 465.

The allegations in Stevens involved depictions of animal fighting. Id. at 466. The defendant argued the indictment was facially invalid under the First Amendment and moved to dismiss the charges. Id. at 467. The Supreme Court agreed. Id. at 482.

The Court began its analysis by construing the law's text. Id. at 474. As the Court explained, "it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." Ibid. (quoting Williams, 553 U.S. at 293). And when reading the law, the Court observed that it created an offense "of alarming breadth." Ibid.

Although the law purported to criminalize animal cruelty, "nowhere" does the statute "require[] that the depicted conduct be cruel." Ibid. In addition, although the text's reference to intentionally maiming, mutilating, and torturing "convey[ed] cruelty," wounding and killing did not. Ibid. The Court described multiple examples of hunting and livestock slaughter that were illegal in only some parts of the country, yet the statute's broad language prohibited their depiction everywhere. Id. at 474-77. Hunting periodicals and television programs could likewise run afoul of the law. Id. at 476.

The Court declined to accept the Government's representation that it would use the statute "to reach only 'extreme' cruelty." Id. at 480. It explained it "would not uphold an unconstitutional statute merely because the Government promised to use it responsibly." Ibid. Nor could the Court rewrite the statute "to conform it to constitutional requirements." Id. at 481 (quoting Reno v. ACLU, 521 U.S. 844, 884-85 (1997)). Because "the presumptively impermissible applications of [the law] far outnumber[ed] any

16

permissible ones," the Court held that the law was "substantially overbroad, and therefore invalid under the First Amendment." Id. at 481-82.

VI.

A.

Consistent with the Supreme Court's approach, the "first step" in this appeal is to examine the text of the regulation to construe its scope. See id. at 474. In an overbreadth challenge, the proper focus belongs on "what the [law] covers," not what regulators or legislators may have intended it to cover. See id. at 465, 474.

We therefore begin with the critical language in paragraph (j), which is rather broad: "the EEO/AA Officer/investigator shall request that all persons interviewed, including witnesses, not discuss any aspect of the investigation with others." N.J.A.C. 4A:7-3.1(j).

The section has few, if any, limits. It directs state actors to ask victims and witnesses to give up their constitutionally protected right to free speech. It commands investigators to request complete confidentiality in every investigation. And it extends to all witnesses without exception. Taken at face value, victims and witnesses are asked not to speak with their spouse or an

17

attorney. Likewise, they may reasonably understand that they are being asked not to contact other government agencies or law enforcement officials.[2]

In short, the request is as simple as it is wide-ranging: not to speak with anyone about any aspect of any investigation into harassment or discrimination. That request encompasses a great deal of protected speech.

As described in the last sentence of paragraph (j), the request also has no time limit. It appears to extend indefinitely, even beyond the end of an investigation.

One exception appears in the text of the rule: victims and witnesses can disclose information if "there is a legitimate business reason to" do so. Ibid. The regulation does not define the phrase or offer guidance about what it

---

[2] The State submits that employees can file a lawsuit or a complaint with the Division on Civil Rights consistent with N.J.A.C. 4A:7-3.1(h). That section provides that employees cannot be retaliated against or subjected to "adverse employment consequences" for "bringing a complaint, providing information for an investigation, or testifying in any proceeding under this policy." Paragraph (d) also states that "[a] person who wishes to take action about prohibited sexual physical contact can file a criminal complaint with law enforcement of the municipality where the incident occurred." Id. at (d). But investigators are not required to convey that information, and it is unclear how victims and witnesses unfamiliar with the regulation would know about those sections.

More generally, the State suggests that any employee who is unsure of the regulation's sweep can ask the investigator to clarify it. That approach would shift the onus onto victims and witnesses rather than keep the focus where it belongs -- on the request investigators are required to make. See id. at (j).

18

means, and any reasonable person would find it difficult to understand the rule's vague language.

What the regulation leaves out is also significant. It does not require that victims be told they are free to decline to follow the request. They are not told they can consult with an attorney about it. Nor are they told there will be no repercussions if they exercise their protected right to free speech.

Viewed as a whole, the unadorned language of the regulation extends quite broadly. The State, however, correctly points out that paragraph (j) no longer directs victims and witnesses not to speak about investigations; it instead requests them not to. Yet the way the request must be conveyed exacerbates its potential to chill protected speech.

There is an inherent power imbalance here between the investigator who makes the request and the witness who hears it. Investigators speak on behalf of an agency of the State. Beyond that, victims and witnesses dependent on their employer can reasonably be concerned they may face consequences if they fail to comply. Cf. Stericycle, 372 N.L.R.B. No. 113, at *2 (assessing facial challenges to employer work rules and noting that "[b]ecause employees are typically (and understandably) anxious to avoid discharge or discipline, they are reasonably inclined both to construe an ambiguous work rule to prohibit statutorily protected activities and to avoid the risk of violating the

19

rule by engaging in such activity"); NLRB v. Gissel Packing Co., 395 U.S. 575, 617 (1969) (noting, in the labor relations setting, that balancing an employer's right of expression and the employees' equal right to associate freely "must take into account the economic dependence of the employees on their employers"). As a result, many employees will undoubtedly give up their right to speak freely and will remain silent.

At oral argument, counsel for the Attorney General stated that, consistent with the intent of the regulation, investigators "should explain to the witness that they are not required to" follow the request. Counsel also did not object to the Court including in an opinion that the "request should be accompanied by . . . some language that makes it clear that [1] it is not mandatory and that [2] there [will be] no discipline."

Revisions to the regulation of that type would help address its broad sweep. But we cannot expand and rewrite the final sentence of the regulation to render it constitutional. Stevens, 559 U.S. at 481. Nor would changes of the sort proposed be a candidate for judicial surgery. To save an otherwise unconstitutional rule, courts on occasion can "excise a constitutional defect or engraft a needed meaning" to ensure a statute's survival. Hamilton Amusement Ctr. v. Verniero, 156 N.J. 254, 280 (1998) (quoting Right to Choose v. Byrne, 91 N.J. 287, 311 (1982)); accord State v. Natale, 184 N.J.

20

458, 485 (2005). Adding substantial language to the regulation here, though, would extend beyond the limits of judicial surgery.

We therefore hold that the regulation is unconstitutionally overbroad. Its breadth encompasses a significant amount of protected speech, and its consequences are real, "not fanciful." See Hansen, 599 U.S. at 770. The scope of the rule will cause countless victims and witnesses to surrender their protected right to speak freely about harassment and discrimination. Although we acknowledge the State's good-faith representations that the regulation can be narrowed, we cannot rely on them to uphold the rule. See Stevens, 559 U.S. at 480. We therefore strike the last sentence of paragraph (j) on overbreadth grounds based on the broad protections in the State Constitution.[3]

### B.

The Court's opinion in R.M. v. Supreme Court of New Jersey, 185 N.J. 208 (2005), does not alter the above analysis. In that case, the Court invalidated the confidentiality provisions of Rule 1:20-9, which "mandate[d] that a grievance filed against an attorney remain[] confidential until a formal

---

[3] For that reason, we do not rely on or discuss the standards the parties cite from Pickering v. Board of Education, 391 U.S. 563 (1968), or Stericycle, 372 N.L.R.B. No. 113. Nor do we reach Usachenok's argument based on the anti-retaliation provisions of the LAD.

complaint is filed." Id. at 211.[4] The confidentiality rule had five exceptions, none of which applied to the case. Ibid.

In striking the rule's broad requirement of confidentiality on First Amendment grounds, the Court observed that ethics committees can still "recommend that the grievant maintain the confidentiality of the process during the investigatory stage and the grievant can agree to do so when it is in his or her interest." Id. at 229 (emphasis added). Paragraph (j) does not convey the latter point. The Court in R.M. also noted that if ethics investigators "can establish a compelling need for secrecy based on the specific and articulable facts of a case, [they] can seek an appropriate order requiring confidentiality." Ibid.

### C.

In striking part of the regulation, we do not question the principles it tries to foster: "to protect the integrity of the investigation, minimize the risk of retaliation . . . , and protect the important privacy interests of all concerned." N.J.A.C. 4A:7-3.1(j).

Confidentiality protects the privacy interests of all involved, particularly at a stage when allegations have yet to be proven. It also protects the integrity

---

[4] The current version of the Rule states that grievants may comment publicly about "the disciplinary process, the filing and content of the grievance, and the result." R. 1:20-9(b). Respondents have the right to reply publicly. Ibid.

22

of an investigation. Among other benefits, it prevents witnesses from coordinating their stories either in an innocent or nefarious way. Confidentiality may also encourage reluctant witnesses to speak. And it can minimize the risk of retaliation during or after an investigation.

Those interests and concerns are entirely legitimate and are also important considerations in criminal and internal affairs investigations. See N. Jersey Media Grp., Inc. v. Township of Lyndhurst, 229 N.J. 541, 579 (2017). We do not address those types of investigations here, and nothing in this opinion should be construed to limit requests for confidentiality by investigators in those settings.

State actors can express the government's viewpoint. As the United States Supreme Court observed in Matal v. Tam,

> [t]he First Amendment prohibits Congress and other government entities and actors from "abridging the freedom of speech"; the First Amendment does not say that Congress and other government entities must abridge their own ability to speak freely. . . .
>
> . . . . When a government entity embarks on a course of action, it necessarily takes a particular viewpoint and rejects others. The Free Speech Clause does not require government to maintain viewpoint-neutrality when its officers and employees speak about [a course of action].
>
> [582 U.S. 218, 234 (2017).]

23

As a result, state investigators can explain the benefits of confidentiality to victims and witnesses in investigations tied to the regulation. And victims, in turn, have the right to disagree and speak freely.

To be clear, the challenge here is not over the State's legitimate concerns. It is about how the current regulation sought to promote them.

## VII.

For the reasons set forth above, we reverse the judgment of the Appellate Division and strike the last sentence of paragraph (j) on overbreadth grounds under the State Constitution. We remand to the trial court for further proceedings relating to the pending complaint.

JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, FASCIALE, and NORIEGA join in CHIEF JUSTICE RABNER's opinion. JUSTICE WAINER APTER did not participate.

24